*Hewlett, for appellant.*
*Wake, for appellee.*

---

JAMES GRAHAM & CO. *v.* DUCKWALL, FITCH & CO.

**Brokers—Who is a Broker?**
 A broker is a mere negotiator between other parties and never acts in his own name, but in the name of those who employ him, he is not instrusted with the custody or possession of the goods; he is employed to sell and is not authorized to buy and sell in his own name.

**Factors—Who is a Factor?**
 A factor is one who may buy and sell in his own name as well as in the name of his principal, and is intrusted with the possession, management, control and disposal of the goods to be bought and sold, and has a special property in them.

**Brokers—Sale by—Notice to Purchaser.**

> As appellees were informed that the goods was not in the posses-
> sion of the party from whom they made the purchase; this was
> enough to put them on their enquiring as to who was the owner and
> in what character the seller acted in making the sale.

APPEAL FROM JEFFERSON COURT OF COMMON PLEAS.

May 9, 1871.

OPINION BY JUDGE PRYOR:

The court, being sufficiently advised, delivered the following
opinion herein, to-wit:

This action was brought by appellants, wholesale groceries in
the city of Philadelphia, against appellees, grocers in that part
of the city of Louisville known as Portland, to recover from
them $1,130.18, the price of a bill of goods sent to them by
appellants, of which a bill of particulars is filed and made part
of the petition dated December 4, 1867.

Appellees in their answer deny that they even purchased a
bill of goods of appellants at any time whatever, and deny that
they owe them $1,130.18 or any part thereof or any sum of money
whatever, but state that some time in November or early in
December, 1867, Cutter Bennett & Co., doing business as com-
mission merchants in Louisville, called on them at their place
of business in Portland and offered to sell them coffee and syrup
by sample on thirty days' time, and exhibited to them the sam-
ples of the articles they proposed to sell, informing them that
they did not have the articles which they proposed to sell them
in store but said they had them somewhere in the east, and it
would be about two weeks before they could deliver them; that
they told said Cutter, Bennett & Co. if their coffee and syrup
corresponded with the samples they would take a specified
quantity of each at the price at which they offered them; that
the goods were shipped to them by rail a part from New York,
and a part from Philadelphia, but that they did not receive with
them, nor by mail or otherwise any account or letter of advice
to inform them that said goods were the property of any other
person than Cutter, Bennett & Co., and at the expiration of
thirty days, the time on which they made the purchase, they

paid Cutter, Bennett & Co. $1,127.18, the price which they agreed and promised to pay for said goods.

They further state that when they purchased the goods they believed Cutter, Bennett & Co. were the owners; that no other person or persons were disclosed to them as the owners, and they paid them therefor, believing at the time that they alone had the right to receive the price.

By an amended petition appellants charge that Cutter, Bennett & Co. were merchandise brokers and, as such, sold the goods to appellees, and by their letter under date 2d of December, 1867, informed them of the sale and directed the shipment of the goods, which letter, with a duplicate of the bill of lading and bill of goods, they filed with their amended petition.

In answer to the amended petition appellees deny that Cutter, Bennett & Co. sold them the goods as brokers, or that they had any knowledge or information sufficient to form a belief as to whether or not they were brokers. They allege that Cutter, Bennett & Co. did business on 3d street in Louisville, where they advertised themselves as commission merchants and auctioneers; they deny that they had any knowledge or information sufficient to form a belief that said Cutter, Bennett & Co. were brokers or sold the goods as appellant's agent, and deny that they ever received a bill of the goods or a bill of lading.

After the pleadings were made up the issues of fact were submitted to a jury who found a verdict for appellees, and a new trial having been refused by the court below, judgment was rendered in conformity to the verdict from which this appeal is prosecuted.

When the evidence was closed three instructions were asked by appellants, all of which were refused and two given which were asked by appellees, and whether the court erred in refusing and giving instructions is the important question in this case.

For appellant it is insisted that Cutter, Bennett & Co. acted in the sale of the goods to appellees as merchandise brokers and not as factors or commission merchants, and that as the goods were sold by samples, and appellees were informed at the time of sale that they were not in the possession of Cutter, Bennett & Co. but were in the east and were to be shipped and delivered to them in two weeks thereafter, the law will infer that they

knew that the goods belonged to other parties, and if they paid the price to Cutter, Bennett & Co. they did it at their own risk.

The correctness of this position is controverted by appellees and they contend that as the party who made the sale to them did not disclose the character in which he acted, they had a right to infer that he was the owner of the goods or, at most, that as Cutter, Bennett & Co. were doing business under a sign as commission merchants and auctioneers in dealing with them, the law would imply that they acted in the transaction as factors and, if in the latter capacity, a payment to them would be binding on the owners.

As the evidence was conflicting and the jury have made a verdict, we can not disturb their finding unless the court below erred in giving or withholding instructions, or in the admission or rejection of evidence the judgment must stand.

Mr. Justice Story, in his book on agency, section 28, defines a broker to be an agent employed to make bargains and contracts between other persons in matters of trade, commerce, or navigation for compensation, commonly called brokerage. Or, in the language of Lord Chief Justice Tindal a broker is one who makes a bargain for another and receives a commission for so doing. And Justice Story further says: Properly speaking, a broker is a mere negotiator between other parties and never acts in his own name, but in the name of those who employ him. Where he is employed to buy or to sell goods he is not intrusted with the custody or possession of them and is not authorized to buy or sell them in his own name. He differs from a factor in several important particulars. A factor may buy and sell in his own name as well as in the name of his principal. A factor is intrusted with the possession, management, control and disposal of the goods to be bought or sold, and has a special property in them. A broker, on the contrary, usually has no such possession, management, control or disposal of the goods, and consequently has no such special property or lien. Ib., Section 34.

If a broker sells the goods of his principal in his own name (without some special authority so to do), in so much as he exceeds his proper authority, the principal will have the same rights and remedies against the purchaser as if his name had been disclosed by the broker. Ib., Section 28.

In section 109, Justice Story, in the same work: A broker employed to buy or sell goods without limitation of price has the incidental authority to bind his principal by any price at which he honestly buys or sells. So a broker authorized to sell goods without any express restriction as to mode, may sell the same by sample, or without warranty. Ordinarily he cannot make the contract in his own name, but ought to do it in the name of his principal. So he cannot buy or sell on credit, except in cases justified by the usuages of trade. So a broker has ordinarily no authority *virtute officii,* to receive payment for property sold by him, and if payment is made to him by the purchaser it is at his own risk unless from other circumstances the authority can be inferred.

But factors stand in a different relation to their principals. The same author in section 110, says: Factors may sell the goods of their principal in their own name and may buy in like manner, and in each case the principal will be bound by their acts in the same way and to the same extent as if his own name were used. And in section 111: It is said they have a special property in goods consigned to them, and for money, if not for most purposes (except as between themselves and principal), they are treated as the owners of the goods and consignees for sale, such as commission merchants, are described as factors.

It is to this consideration that factors are to be treated as special owners of the property consigned to them that may be referred many of the rights and powers attributed to them.

They may sue in their own name for the price of goods sold by them for their principal, and of course they have a right in their own names to receive payments, to give receipts for payments, and to discharge the debtors from their official transactions, at least, unless notice is given to the contrary by their principal. Ib., Section 112.

Having thus ascertained the difference between factors, or commission merchants and brokers and their respective powers and duties, we may, with more confidence, examine into the action of the court below in granting and refusing instructions.

Appellant asked the court to instruct the jury. First, if they believe from the evidence that the goods were shipped by them to and were received by appellees directly from them, and

.that Cutter, Bennett & Co. merely negotiated the sale between the parties and never had the goods in possession, the law was for appellants, unless they should believe from the evidence that Cutter, Bennett & Company had express authority from appellants to receive payment from appellees; this instruction was refused and one given on motion of appellees to the effect that if the jury believed from the evidence that Cutter, Bennett & Company sold the goods to them by sample without disclosing to them at the time that they were acting for appellants in making said sale, and appellees paid the price to Cutter, Bennett & Co. when due, without notice that appellants claimed the price and looked to them for payment, the law was for them.

We do not propose to enter upon an analysis of the evidence but to determine whether the first instruction asked by appellants was properly refused, it must be ascertained whether it was a mere abstraction or baseless proposition.

Appellees certainly knew that the goods were not in the possession of Cutter, Bennett & Co. when they made the purchase, for they were so informed, and they were also informed that they were in the east and would be shipped to them; and there was evidence conducing to show that they got a bill of lading with the names of appellants at the head of it showing their business, place of business; that they were the owners of the goods and shipped them directly to appellees, dispensing with all agents and consignees. This was enough to put appellees on the inquiry as to who were the owners of the goods and in what character Cutter, Bennett & Co. acted in making the sale, and to authorize the first instruction asked by appellants, and any instruction in conflict with it, is deemed erroneous.

Wherefore the judgment is reversed and the cause is remanded with directions to award a new trial and for further proceedings consistent with this opinion.

*Gazley, Yeaman & Reineke, for appellees.*