## Sutton & Cummins v. Kiel Cheese & Butter Company.

(Decided October 23, 1913).

### Appeal from Jefferson Circuit Court
### (Common Pleas Branch, Third Division).

1. **Principal and Agent—Brokers—Factors—Purchase By—When Invalid.**—Neither a broker nor a factor can purchase from the principal for himself without apprising the principal of all the facts within his knowledge, unless it be clearly understood between them that he has the right to do so.

2. **Principal and Agent—Brokers—Factors—Purchase By—When Invalid—Evidence.**—The mere fact that a principal first declines to ship a broker goods ordered, without knowing the names of the purchasers, and then consents to do so upon ascertaining that the broker is financially responsible, is not sufficient to establish the right of the broker to purchase for himself, especially in view of the fact that the broker continues to charge brokerage on every transaction that they have.

DUFFIN, SAPINSKY & DUFFIN for appellants.

WILLIAM KRIEGER and ALBERT C. DICK for appellees.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

Plaintiff, E. S. Sutton and W. J. Cummins, partners doing business under the firm name of Sutton & Cummins, brought this action against defendant, Kiel Chesse & Butter Company, for violation of an alleged contract made with the defendant, by which it agreed to deliver to plaintiffs free on board cars at Keil, Wisconsin, during the month of October, 1907, 2,000 boxes of cheese of the brand known as "Daisies" at the price of 14 1-2 cents a pound. Defendant answered and denied that it entered into the contract sued on, and in its second paragraph pleaded a set-off and counterclaim of $3,630. The jury returned a verdict finding that neither plaintiffs nor defendant were entitled to any damages whatever, whereupon judgment was entered dismissing plaintiffs' petition and defendant's set-off and counterclaim. From that part of the judgment dismissing plaintiffs' petition, plaintiffs appeal.

At the time of the transactions complained of plaintiffs were merchandise brokers in Memphis, Tennessee. Defendant was engaged in the manufacture of cheese at Kiel, Wisconsin.

On October 1, 1906, plaintiffs made application for defendant's account at Memphis, and asked the privilege of representing them at that point. Defendant replied that if plaintiff would give it exclusive representation in its line it would place its account in their hands. On Ortober 5, 1906, plaintiff ordered by telegraph 100 cheeses of the Dasies variety at the price of 13 cents. The telegram was followed by a letter asking that the cheese be shipped open. Defendant answered by wire, stating that it must ship some wholesale grocer or draft bill of lading attached. On the same day it wrote plaintiffs a letter saying that they did not enjoy a commercial rating which would warrant its extending to them a line of credit. The letter also contains the statement: "We understood that you wished to represent us on a brokerage basis, and did not understand that you wished to buy goods direct." On October 8th plaintiffs wrote defendant a letter wherein they stated: "Bradstreet gives us a rating of $300,000.00. This certainly should be sufficient rating to buy 50 boxes of cheese on." On October 10, 1906, defendant wrote plaintiffs that it was decidedly in the wrong in its recent letter. At the same time it shipped 50 boxes of cheese at the original price. On October 13th plaintiffs wrote defendant stating that they accepted its apology, and asking it to enter their order for 50 additional boxes, to be shipped about two days after date of shipment of the first lot. They further stated in their letter that they were unable to make delivery of one lot of cheese to two buyers, for the reason that the rules of the railroad prohibited their doing so. On October 15, 1906, plaintiffs telegraphed defendant as follows:

"Canale and Company offer twelve three-quarters for two fifty daisies, answer."

On October 15th defendant wrote plaintiffs in answer to their letter of the 13th, stating that they were shipping 50 boxes of Daisies, which they invoiced at 13 3-4c, f. o. b., Kiel. On October 18, 1906, plaintiff sent the following telegram to defendant: "Please ship us 50 boxes Daisies, full cream, 13 1-4c, f. o. b., Kiel, Wis." On October 20, 1906, plaintiffs sent defendant a check for $143.82 in payment of invoice of October 10th. On October 22nd defendant acknowledged receipt of the remittance. On October 25, 1906, plaintiffs sent defendant a check for $144.57, covering invoice of October 15th. On October 30th plaintiffs wrote defendant that the 50 boxes

of cheese shipped on October 22nd checked short. On November 1, 1906, defendant wrote plaintiffs stating that one-half pound to the box was not excessive shortage, but one and one-half pound was excessive. On November 5, 1906, plaintiffs sent defendant a check for $139.53 to cover invoice of October 22nd. On November 7th, defendant acknowledged receipt of the remittance.

The foregoing telegrams and correspondence were all preliminary to the making of the alleged contract on which this suit is predicated. That contract grows out of the following correspondence:

On September 27, 1907, plaintiffs telegraphed defendant as follows: "Wire your lowest future price on Daisies." In reply they received the following telegram, dated September 28th: "Daisies fourteen half September shipment, quarter advance monthly, telegraphic acceptance, market advancing, this price low." On the same day defendant wrote plaintiffs a letter setting forth the exchange of wires, and stating that the price of 14 1-2 cents on Daisies was very low, and should bring the business. On October 1, 1907, plaintiffs sent the following wire to defendant: "Telegram received, proposition accepted, two thousand boxes."

On the same day defendant wrote plaintiffs a letter confirming the exchange of wires and further stating that the price was the best it could do, and it advised plaintiffs' friends to buy, as the price was very low. On the same day plaintiffs wrote defendant, confirming the exchange of wires, and accepting their proposition. On October 2nd, defendant wrote plaintiffs acknowledging receipt of telegram of October 1st, ordering the two thousand boxes, and asked for mail advices as to who the purchaser was. On October 3, 1907, it again wrote plaintiffs, asking the name of the purchaser. On October 5th, plaintiffs wrote defendant saying that they themselves were the purchasers. On October 7th, defendant wrote plaintiffs saying that they were surprised to learn that plaintiffs were the purchasers. The letter also contained the following statement:

"We considered you as our brokers and are not making other prices to you and not in a position to close the contract under these circumstances.

"Our correspondence with you has been as brokers, as your letter-head signified, and not as dealers."

On October 9, 1907, plaintiffs acknowledged receipt of defendant's letter declining to accept contract if

ordered in their name. In this letter they stated that two of their largest buyers and themselves had decided to purchase cheese, and added that if defendant was still opposed to giving plaintiffs the contract in their name, they would give it a jobber's contract. On October 11, 1907, defendant wrote plaintiffs declining to give them the benefit of the contract. At the same time it added:

"Your letter-head distinctly states that you are merchandise brokers and we have always considered you as such and always presumed, when we made you prices, that they were for your jobbers or wholesale dealers and never considered that we were quoting cheese to you. We will be pleased at any time to accept contract from your jobbers at current prices, but certainly could not, in justice to ourselves, turn this contract over to anyone."

On October 14, 1907, plaintiffs wrote defendant as follows:

"We have your favor and note contents, and are sincerely sorry that you have taken the stand you have. We presume that you are in your rights."

They then asked the price of 500 boxes for the Day & Bailey Grocery Company for future shipment. Up to that time plaintiffs had made certain orders in the name of Day & Bailey and Ely Lesser.

It is the contention of plaintiffs that their telegram of September 27, 1907, saying "Wire your lowest future price on Daisies," together with the telegram of defendant of September 28th "Daisies fourteen half September shipment, quarter advance monthly, telegraphic acceptance, market advancing, this price low," together with their telegraphic acceptance of October 1, 1907, as follows: "Telegram received, proposition accepted, two thousand boxes," and the various letters confirming the exchange of wires, constitutes a binding and enforceable contract in their favor against the defendant, and that the trial court should have so decided and directed a verdict in favor of plaintiffs for the amount of the claim sued on. Even if this be conceded, there is another element in this case which prevents a recovery by the plaintiffs and that is the relation of the parties. The difference between a broker and a factor is that a broker is a mere negotiator between other parties, and does not ordinarily act in his own name, but in that of his employer. He is not entrusted with the custody of goods which he may be employed to buy or sell, and is not authorized to buy or sell them in his own name. On the other hand, the

factor may buy or sell in his own name as well as in the name of his principal, and he is entrusted with the possession, management, control or disposal of the goods to be bought or sold, and has a special property in them. Graham & Co. v. Duckwell, Fitch & Co., 8 Bush, 12; Story on Agency, section 34; Slack v. Tucker, 23 Wall. (U. S.), 321; 4 Am. & Eng. Ency. of Law, 961. However, the characters of factor and broker are frequently combined, the broker having possession of what he is employed to sell, or being empowered to obtain possession of what he is employed to purchase; but in these cases he is, properly speaking, a factor. Haas v. Ruston, 14 Ind. App., 8. It is manifest that the relation which plaintiffs bore to defendant in this case was that of brokers. But even that distinction is immaterial so far as this case is concerned, for neither a broker nor a factor can sell to himself unless the principal, with full knowledge of the facts, consents to the transaction, or unless it is clearly understood between the parties that he shall do so. Tausig v. Hart, 58 N. Y., 425; Keighler v. Savage Manufacturing Co., 12 Md., 383, 71 Am. Dec., 600; Wadsworth v. Gay, 118 Mass., 44; Tillney v. Wolverton, 46 Minn., 256; Sims v. Miller, 37 S. C., 402, 34 Am. St. Rep., 762; Stewart v. Mather, 32 Wis., 344. The reason for the rule is that if a broker or factor were permitted to buy from and sell to himself there would be combined in him the incompatible relations of purchaser and seller, and an interest adverse to that of his principal would be created such as would ordinarily lead to a violation of his duty as agent. Where a factor or broker sells to himself, the sale is *prima facie* voidable, and the principal may either ratify the sale or recover for the actual value of the goods. In the present case plaintiffs insist that defendant had actual knowledge of the fact that they were making purchases of cheese in their own name, and acquiesced in this arrangement. This knowledge, it is claimed, is shown by the fact that defendant first asked the names of plaintiffs' purchasers, but after investigating their financial standing, shipped the goods to them direct. As we view the correspondence, however, there is nothing in it to show that defendant regarded the plaintiffs in the light of purchasers. It is entirely consistent with the theory that defendant wanted to know either that the intending purchasers, or plaintiffs, as their agents, were financially responsible. Furthermore, plaintiffs charged a brokerage on all transactions had with defendant. Not only so, but

in their letter of October 1, 1907, confirming the telegraphic correspondence with reference to the particular cheese in question, they stated: "We take it for granted that our brokerage will be 1-4c." Instead, therefore, of fully acquainting defendant with the fact that they were purchasing the cheese for their own account, they were demanding brokerage on the transaction, a fact absolutely inconsistent with their claim as purchasers. Under these circumstances, the sale was voidable at the election of the defendant, and having repudiated the sale when apprised of the fact that the plaintiffs were the real purchasers, no liability attached on the contract in question, even if we assume that it is valid in other respects. We, therefore, conclude that so far as plaintiffs' claim is concerned, defendant was entitled to a peremptory instruction. That being true, plaintiffs were not prejudiced by the submission of the case to the jury, for the jury found as the court should have directed them to find.

Judgment affirmed.