## Spotswood & Son v. Estes.

(Decided September 28, 1915.)

### Appeal from Pulaski Circuit Court.

Principal and Agent.—An agent who is entrusted with the management of the business of his principal is under a duty to exercise

the utmost good faith in the conduct of the business committed to his care.

O. H. WADDLE & SONS for appellant.

WESLEY & BROWN for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Reversing.

From 1902 until November, 1910, the appellee, Estes, was employed by the appellant, Spotswood & Son, a corporation, to look after and manage its business in Pulaski County relating to the purchase and manufacture of timber. In 1910 Estes was discharged, and in 1911 brought a suit to recover $3,430.42 alleged to be due him as salary, subject to credits amounting to something over $400.

For answer to this suit Spotswood & Son admitted its indebtedness to Estes on account of his claim for salary, but asserted a counterclaim against him for some $9,000 that it alleged was the amount due by him on a correct settlement of the matters in issue between them.

Shortly after the institution of this suit, Spotswood & Son brought a suit against Estes seeking to have conveyed to it a tract of land purchased by and conveyed to Estes, on the ground that the conveyance to Estes was a fraud upon its rights.

After this the two suits were consolidated and referred to the Master Commissioner of the court for settlement of the accounts. The Commissioner filed a report, to which exceptions were duly taken by Spotswood & Son, but the exceptions were overruled and judgment given in favor of Estes, in accordance with the report of the Commissioner, for $2,713.39, with interest from June 1, 1910, and the costs of each of the consolidated actions. From this judgment Spotswood & Son appeals.

The principal office of Spotswood & Son was in Lexington, Ky., and its business in Pulaski County consisted in purchasing timber and manufacturing it into lumber. This business, which included the buying of timber, the employment of hands, the purchase of material and machinery, and everything connected with the manufacture of timber into lumber, was in charge of Estes. In the management of this extensive business during the eight years of his employment, Estes received and expended for Spotswood & Son about $84,000.

It appears the business between these parties was conducted substantially as follows: Spotswood & Son, as

stated, had its principal office and place of business at Lexington, Ky., some distance from Pulaski County, and all of the money expended in its business in the purchase of timber and the manufacture of it into lumber was attended to by Estes. From time to time Estes would make out a statement, showing the money needed in the transaction of the business as well as the money that had been expended by him in the business since the last report and send this statement or account to Spotswood & Son, and it would then forward to him the needed money. Spotswood & Son had implicit confidence not only in the good business ability of Estes, but in his integrity, and accepted without question all of his statements as to expenditures and receipts of money and relied entirely upon the reports made by him of the amounts needed to carry on the business. During the eight years that Estes was manager of this business, no investigation of his accounts was made, nor was there any effort to superintend or direct the management of the affairs in his hands. Everything was left to him.

It also appears that Estes kept a book or books in which he charged himself with all the money received from Spotswood & Son and credited himself with the amounts paid out, showing the purpose for which the payments were made; and it was the custom of Estes at the end of each month to forward to Spotswood & Son a statement showing the amount received and paid out during the month.

In 1910, on account of some difference of opinion, growing out of the grading of lumber, Estes was discharged, and thereafter Spotswood & Son had a book-keeper to compare the reports sent to it by Estes with the books kept by him, and this examination and comparison disclosed a number of errors in favor of Estes, which are sought to be corrected in the counterclaim.

Other items in the counterclaim grow out of the charge that Estes, taking advantage of his position, deceived and defrauded his employer in some trades concerning live stock between them, by reason of which it lost several hundred dollars. It also sought to charge him with several hundred loads of manure that it was claimed he carried away from its premises and appropriated to his own use. There was also a claim that Estes had used lumber owned by Spotswood & Son for which he failed to account or pay. Another claim was that Estes had defrauded it in a land transaction.

Estes, as the agent and sole manager of all the business of Spotswood & Son, involving large sums of money, was under a duty to exercise the utmost good faith in the conduct of the business committed to his care, but it appears that the investigation of his accounts after his discharge disclosed a good many errors and discrepancies. Considering, however, the large amount of money he handled and the manner in which it was paid out, it is not singular that there should have been some errors and mistakes made, and we do not attribute these errors and mistakes to fraud on the part of Estes.

There are, however, a few transactions shown by the record that we think the Commissioner erred in disposing of. For example, Estes had charge of several teams owned by Spotswood & Son, and it appears that on his representations Spotswood & Son was induced to trade horses with him. This trade was really conducted on both sides by Estes representing himself and, it might be said, representing Spotswood & Son, and we think the evidence shows that Estes gave himself the advantage in this trade to the extent of at least $100, for which he should be required to account.

It also appears that Estes traded Spotswood & Son a pair of horses for a pair of mules, and in this trade he obtained an advantage of at least $150, for which he should be required to account.

The Commissioner, in his report, charged Estes with eighty loads of manure at one dollar per load, when he should have been charged, as we think, with two hundred loads at one dollar per load, making a difference of one hundred and twenty dollars.

It seems that Estes bought a tract of land and traded the timber on this land to Spotswood & Son for a tract of land owned by it. In this transaction Estes made a substantial profit, but it appears from the evidence that he acted in good faith with his employer, and therefore we are not disposed to disturb this transaction.

It is also contended that the court erred in allowing Estes interest on the amount found due from June 1, 1910. Without going into the details of this transaction, we think interest should have been charged from July 12, 1911, the date of the institution of the suit, and not from June 1, 1910.

There is also a claim that the court erred in adjudging the costs against Spotswood & Son, but there is no merit in this claim.

We have carefully gone over this entire record, and while it is not possible to get at the exact right of the case, our opinion is that Spotswood & Son should, in addition to the amounts allowed by the Commissioner, have credit by $370.00 on account of the items indicated, and that interest should be allowed on the balance found from July 12, 1911.

Wherefore, the judgment is reversed, with directions to enter a judgment in accordance with this opinion.