## Maxwell v. Bates et ux.

(Decided June 16, 1931.)

FOWLER, WALLACE & FOWLER for appellant.

JAMES PARK and TOWNSEND & PARK for appellees.

OPINION OF THE COURT BY CHIEF JUSTICE THOMAS—Affirming.

Appellant and plaintiff below, J. S. Maxwell, operates a real estate agency in the city of Lexington which he conducts in the trade-name of Maxwell Realty Company. Appellees and defendants below, George W. Bates and wife, owned a residence in the city of Lexington and the lot upon which it was situated. On January 28, 1930, defendants, by written contract, placed their house and lot in the hands of plaintiff for sale at public auction and in which they agreed to pay him a stipulated commission for making the sale and to pay for the expenses of advertising it; but the labor incident thereto, including the auctioneering and all other expense to complete the sale, were to be borne by plaintiff. At the sale plaintiff employed an auctioneer to cry it, and

the latter accepted plaintiff · as the one making the highest and best bid and declared him the purchaser. He later offered to comply with the terms of his bid and requested defendants to convey to him the property that he claimed to have so purchased, he tendering performance in accordance with the terms of the sale; but they refused, and plaintiff brought this equity action against them in the Fayette circuit court to enforce specific performance of his alleged purchase. His petition as amended alleged the facts as ,we have stated them, and also that defendant, George W. Bates, was present at the sale and saw plaintiff bidding on the property, and did not interpose any objection thereto, and for which reason both he and his wife were estopped to question the right of plaintiff to become the purchaser in the manner indicated. The court sustained defendants' demurrer to the petition as so amended, and, plaintiff declining to plead further, his petition was dismissed, to reverse which he prosecutes this appeal.

The single question involved in the case is: May an agent, employed by his principal solely for the purpose of effecting a sale of property, himself become the purchaser of it without the agreement or consent of his principal either at private, or public auction sale? The trial court very correctly, as we think, held that he could not, and for the manifest and oft-declared reason that his relationship to his principal as the owner of the involved property was that of confidence and trust, and to permit the agent, in either character of sale, to purchase the property from himself as such agent, would, not only be a violation of that trust, but would create an incentive on his part to disregard the duties that he owes to his principal, in order that he himself might reap a profit through such violation. The established rule on the subject is thus stated in 21 R. C. L., page 829, sec. 13:

"The doctrine is familiar that an agent cannot, either directly or indirectly, have an interest in the sale of the property of his principal which is ,within the scope of his agency, without the consent of his principal, freely given, after full knowledge of every matter known to the agent which might affect the principal. If employed to sell, the agent may not become the purchaser; and if employed to buy, he may not be the seller."

No text, nor any case, so far as we are aware, is in conflict with that rule. The incorporation of it herein, as approved by other standard law-writers could add nothing to its universality or soundness. It is based upon the fundamental principle to the effect that one may not serve two masters when their interests are conflicting, and most especially should that be true if one of the masters was the agent himself. The rule was intended to enforce and preserve honesty and good faith in the discharge of the duties of such a relationship, and, as so generally stated above, we do not understand counsel for plaintiff to question it. For an exhaustive discussion of it, reference is made to annotations in 48 A. L. R., beginning on page 917, and in volume 62 of the same publication, beginning on page 63. This court, along with almost if not every other one in this country has adopted the principle above stated without qualification, as will be seen from the cases cited in note 15 to the excerpt from R. C. L. supra. One of the recent domestic cases adopting and fully approving the doctrine of the inserted text is Sutton v. Kiel, 155 Ky. 465, 159 S. W. 950, in which many cases from foreign jurisdictions of like tenor are referred to. A still later case in this court to the same effect is that of Johnson v. Mitchell, 192 Ky. 444, 233 S. W. 884, 885. A kindred question to the one we have here was involved in it, growing out of the same relationship of principal and agent, and in determining it we found that it was both necessary and relevant to make reference to the well-established rule supra, i e., that an agent may not purchase the property that he is employed to sell without the consent of his principal, and that, if he did so, the latter might disregard the transaction and refuse to comply with it, or, under some circumstance at least, might rescind the sale, notwithstanding it may have been performed and fully consummated.

In the Johnson case the agent, who was one employed to sell real estate, as was the plaintiff in this case, purchased the property himself and procured a deed to be executed to himself by his principal. The latter subsequently learned that the agent, although he had realized the price fixed by the principal, had been offered a greater one by another, but which the agent did not report to his principal, who filed an action against the agent to recover the difference between the price actually paid him by the agent, and the amount that the

other party had offered to pay for the property. The trial court rendered judgment for that difference, and we affirmed it on appeal, and in doing so we said:

"That the relation of principal and agent is one of extreme confidence, and requires of the latter the exercise of the utmost good faith, is a doctrine universally admitted and enforced, and it applies with all of its vigor to a broker who has in his possession or control property of his principal for sale. 9 Corpus Juris, 536; 4 R. C. L. 276, 277; Sutton & Cummins v. Kiel Cheese & Butter Co., 155 Ky. 465, 159 S. W. 950; Spotswood & Son v. Estes, 165 Ky. 743, 178 S. W. 1082. Within this rule, as will be seen from the authorities referred to, the broker may not deal with the subject-matter of the agency for his own advantage without fully disclosing to his principal all of the facts within his knowledge, and if he does so without such disclosure and realizes a profit to himself individually, he may be made to account to his principal therefor."

But, counsel for plaintiff argue in their brief that the foregoing rule should not apply to a public auction sale made "without reserve or by-bid,' and in support of that argument they cite the text in 2 R. C. L., sec. 12. But we acknowledge our inability to discover anything in that text in support of the alleged distinction. It deals exclusively with the subject as to who are competent bidders at an auction sale, and which, strictly speaking, is not involved in this case. One may be competent in law to make a bid at an auction sale and at the same time may occupy such a relationship to the property or its owner as to not possess the right to have his bid accepted and enforced, or, in other words, to realize the benefit of his bid, and which latter is the precise question we have befor us. However, the very language of the text relied on refutes the idea that it was intended to assert an exception to the general rule supra, so as to exclude from its operation a purchase by an agent at an auction sale; for it is therein said, with reference to the duty of the auctioneer to accept the tendered bid, that:

"Nor should he (auctioneer) give consideration to the bids of persons who labor under any incapacity such as infants, lunatics, drunken persons, or persons

standing in a fiduciary relation to the property sold.''

And also: ''Although it has been said that an auctioneer may secretly bid as agent for a third party who employs him, nevertheless it is perfectly manifest that it is impossible with good faith to combine in the one person the inconsistent capacities of seller and buyer, crier and bidder. . . . The irreconcilable conflict between the two positions is evident. Accordingly the authorities generally hold that in bidding he (auctioneer) can not act as agent for the purchaser without the seller's knowledge.''

If the auctioneer cannot bid for himself at such a sale, nor may he act for the purchaser without the seller's knowledge, it is difficult to comprehend the contention that the relied on text supports counsels' conclusion that the general rule supra does not apply to an auction sale, although it may be made ''without reserve or by bids.'' The reason for the rule is just as strong in case of an auction sale as it is in a private one, for in each case the agent is required by the law to exert every legitimate effort within the scope of his duty to guard and protect the interest of his principal and which prohibits him from resorting to any means or pursuing any course that would tend toward a relaxation of such positive duties.

The pleaded waiver, or estoppel, made in the amended petition also cannot be upheld. Of course, if it had been alleged, and proved if denied, that defendants consented for plaintiff to bid for the property himself at the auction sale, and pursuant thereto he made the highest bid and it was accepted by the auctioneer, then the consent of defendants would take the case out of the general rule supra, and for which reason it could not be invoked by them. But no such facts were pleaded, since the language of the amendment was ''that the defendant (George W. Bates) was present at said auction sale and that said bidding by all of the bidders upon said property was made in his presence and that he saw the plaintiffs sign the memorandum of said auction, and bind himself for the purchase of said property and did not raise his voice in objection.'' Accepting as true that averment, and which the demurrer thereto did, there is no fact alleged to show that plaintiff was offering the bid for

himself or that the sole defendant (husband), who was present, knew any such fact, or knew the purpose of plaintiff in doing so.

On the contrary, the defendant, who was present, very properly may have thought that such offered bidding by plaintiff was to prevent a sacrifice of the property, and not with a view to make a bargain for himself, or for some other legal purpose. But if it had been otherwise, then, in the absence of an express consent by both defendants, we would still be unable to adjudge an estoppel as against defendants, since plaintiff was not in the least misled thereby to his prejudice, nor did he incur any loss, damage, or injury that would have been avoided had he not been accepted as the successful bidder, except, perhaps, the loss of profit that he might realize as a result of his bargain, but which latter is the precise thing that the general rule supra prohibits.

We, therefore, conclude that the judgment was proper, and it is affirmed.