**AERO DRAPERY OF KENTUCKY, INC., et al., Appellants,**

v.

**Reynold H. ENGDAHL et al., Appellees.**

Court of Appeals of Kentucky.

Feb. 1, 1974.

As Modified April 12, 1974.

Joseph Davis, Louisville, for appellants.

Adrian F. O'Bryan, I. G. Spencer, Jr., Louisville, for appellees.

CATINNA, Commissioner.

J. H. Cox Manufacturing Company and Aero Drapery of Kentucky, Inc., appeal from an adverse judgment of the Jefferson Circuit Court, Chancery Branch, Fourth Division, in their action against Reynold Engdahl, Marvin Underwood, Allen Brown, Kenneth Bland, and Allen Brown Industries, Inc., d/b/a Starr Interiors.

We affirm the judgment of the trial court as to Underwood, Brown, Bland, and Allen Brown Industries, as there was no fiducial relationship between any of these parties, nor were they bound by any contract of employment. As we have concluded that a fiducial relationship existed between Engdahl and Aero, we reverse as to these two parties.

J. H. Cox Manufacturing Company is a wholesale supplier of drapery material located in Indianapolis, Indiana. Aero Drapery of Kentucky, Inc., is a retailer of custom-made draperies, employing approximately thirty-six people. J. H. Cox was the founder and controlling stockholder of both corporations.

Engdahl was a stockholder in and employed by Cox Manufacturing Company as an administrative assistant to J. H. Cox. He was also a ten-percent stockholder, a director, and the treasurer of Aero. Although Engdahl worked in Indianapolis, two days a month he would go to Louisville in his capacity as treasurer of Aero. He was in effect a liaison man and auditor for Cox. He reported to Cox on the status of accounts receivable, employee morale, and other Aero business information. Engdahl had access to all levels of Aero's corporate organization.

Kenneth Bland was the office manager; Allen Brown, the workroom manager; and Marvin Underwood, a top salesman for

Aero. None of the individuals was under contract to either corporation.

In May of 1967 Bland expressed to Engdahl his dissatisfaction with his employment with Aero. Engdahl suggested that they meet after work to discuss forming a joint venture.

Engdahl, Bland, and Underwood, whom Bland suggested be included, met on May 21, 1967, and discussed a new enterprise and at that time decided to include Allen Brown.

On June 4 they decided to go into the custom-drapery business in direct competition with Aero. Engdahl, at that time, disclosed his participation in a confidential stock-bonus plan from which they had been excluded, exposed confidential profit and expense statistics of Aero, and tentatively offered to loan Bland, Brown, and Underwood $2,000 so that they could purchase stock in their new enterprise. On June 23, 1967, the four decided upon the location for the new business. Fabric suppliers were contacted and a listing was secured in the yellow pages. On July 10, 1967, Engdahl tendered resignations as director and treasurer of Aero Drapery and as an employee of Cox Manufacturing. The resignations were to be effective on August 10, 1967. In reality, the last day of his employment with either corporation was August 5, 1967, although he was on the payroll until August 10. He also tendered the stock he had acquired under the stock-bonus plan for repurchase by the corporation. On August 11, 1967, his other three associates terminated their employment with Aero without prior notice and on August 13, 1967, opened their new business in direct competition with Aero.

Prior to their resignations, they incorporated Allen Brown Industries, named its business enterprise Starr Interiors, opened a bank account, purchased goods and machines, and copied virtually every form and chart used in Aero's business. After the termination of his employ with Aero, Engdahl disclosed generally the stock-bonus plan in a "Letter to Known Stockholders."

It is contended that Engdahl occupied a fiduciary relationship as to Aero, that he breached that duty, and that damage resulted to Aero from the breach.

KRS 271.365 (repealed 1972) imposed a statutory fiduciary duty upon Reynold Engdahl: "Officers and directors shall be deemed to stand in a fiduciary relation to the corporation, and shall discharge the duties of their respective positions in good faith, and with that diligence, care and skill which ordinarily prudent men would exercise under similar circumstances in like positions."

■ Even without this statute there existed a fiduciary relationship between Engdahl and Aero. The position of trust, the freedom of decision, and access to confidential corporate information evidence this fact. By accepting the offices of treasurer and director of Aero, Engdahl elected to manage the affairs and property of Aero for its benefit. The duties and liabilities of any agent to his principal are parallel to the nature of the particular office which the agent agrees to perform. Fletcher Cyclopedia of Corporations, Vol. 3, Chapter 11, Section 847, page 194. In this action Engdahl voluntarily undertook the responsibility of reporting the status of Aero's financial and internal organization to J. H. Cox. He is liable for damages attributable to a breach of that responsibility.

■ The conduct of Engdahl as an officer and director of Aero falls below the standard required of corporate fiduciaries. In Reinhardt v. Owensboro Planing Mill Company, 185 Ky. 600, 215 S.W. 523 (1919), we said:

"The relations of officers and directors in this respect are more closely scrutinized than those of mere stockholders, as the former are charged with the management and conduct of the corporation's business. Directors are bound to exercise nothing short of the *uberrima fides* of the civil law. They must not in any degree allow their official conduct to be swayed by their private interest or welfare, unless that interest be one they

have in the good of the company in common with all the stockholders. They must not profit at the expense of the others. This duty results from the nature of their employment or position, and without any stipulation to that effect. Their private interest must yield to the official duty whenever those interests are conflicting. One cannot faithfully or fairly serve two masters or interests with diverse or conflicting claims. The trust imposed upon a director as such must not be exercised for his own private exclusive benefit, nor for the benefit of third persons."

■ There are numerous instances where a legitimate conflict of interest exists between a fiduciary and his corporation. Whenever a reasonably prudent fiduciary is aware of a conflict between his private interest and the corporate interest, he owes the duty of good faith and full disclosure of the circumstances to the corporation. "If dual interests are to be served, the disclosure to be effective must lay bare the truth, without ambiguity or reservation, in all of its stark significance." Wendt v. Fischer, 243 N.Y. 439, 154 N. E. 303, 304 (1926).

Engdahl's actions in these respects are infected with secrecy and silence. His fiduciary position obligated him not to develop interests antagonistic to Aero without full disclosure.

■ Whenever a fiduciary possesses information and the withholding of that information will damage the corporation, it is his duty to fully disclose these facts to the corporation. The source of the information is not material. Engdahl knew of a forthcoming, simultaneous loss of key employees. A fiduciary could reasonably expect that this loss, without forewarning, would decrease the efficiency of Aero's operation. One of Engdahl's specific duties was the supervision of employee morale, and his failure to report dissatisfactions was a breach of his responsibility to Aero.

■ Engdahl breached his duty by aiding a competitor to copy the forms and charts of Aero. These forms and charts were not patentable ideas or trade secrets; yet they were corporate property which a fiduciary is bound to protect.

■ It often occurs that a fiduciary resigns and enters or creates a competing enterprise. Unless bound by contract, this is permissible, but he cannot, while still a corporate fiduciary, set up a competitive enterprise, Witmer v. Arkansas Dailies, Inc., 202 Ark. 470, 151 S.W.2d 971 (1941), or resign and take with him the key personnel of the corporation for the purpose of operating his own competitive enterprise. Duane-Jones Company, Inc., v. Burke, 306 N.Y. 172, 117 N.E.2d 237 (1954). Cf. Bancroft-Whitney v. Glen, 64 Cal.2d 327, 49 Cal.Rptr. 825, 411 P.2d 921 (1966).

Engdahl should have terminated his duties as director and treasurer when he first began preparation to directly compete with Aero. In Covington & Lexington Railroad Company v. Bowler's Heirs, etc., 72 Ky. 468, 489 (1872), we said:

"* * * From the moment that Bowler concluded to prepare for the purchase of the road his personal interests became antagonistic to those of the corporation, and he should have ceased to act as a director. * * * Instead of looking alone to the interests of the stockholders and creditors of the company, their rights were not only disregarded, but deliberately sacrificed, that profit might result to him."

■ Engdahl also breached his duty to the corporation by exposing the confidential stock-bonus plan, both before and after the termination of his employment with Aero. Fiduciary duty is not renounced at will at the termination of employment. "It is as sacred and inviolable after as before the expiration of its term." Trice v. Comstock, 121 F. 620, 625 (8th Cir. 1903). After the termination of his fiduciary rela-

tionship he is allowed the freedom to compete, and he may carry with him his personal experience, enterprise, and knowledge, but he may not use prior fiducial confidences to profit at the expense of his former employer. The expiration of this fiduciary relationship is the termination of actual responsibilities—in this instance, August 5, 1967.

We are of the opinion that Aero has a cause of action against Engdahl by reason of the breach of his fiducial obligation to it and that in holding otherwise the judgment was in error. The type or types and measures of relief to which it is entitled are questions addressable in the first instance to the trial court upon its reconsideration of the case.

The judgment is affirmed in part and reversed in part with directions for further proceedings on Aero's claims against Engdahl in accordance with this opinion.

OSBORNE, C. J., and JONES, MILLIKEN, PALMORE, REED, and STEINFELD, JJ., sitting.

All concur.