**Opal M. CONKLIN, Plaintiff,**

v.

**JOSEPH C. HOFGESANG SAND COMPANY, INC., Defendant.**

Civ. A. No. C 74–257 L(A).

United States District Court,
W. D. Kentucky,
Louisville Division.

Nov. 3, 1975.

John T. Rankin, Louisville, Ky., for plaintiff.

Ben B. Hardy, Louisville, Ky., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

ALLEN, District Judge.

This action is submitted to the Court for a decision following a court trial on September 25, 1975, on the merits. It

was brought pursuant to 29 U.S.C. §§ 201–219, the Fair Labor Standards Act, and specifically under 29 U.S.C. § 216(b). Jurisdiction is conferred on the Court by 28 U.S.C. § 1337 and 29 U.S.C. § 216(b).

Plaintiff alleges in her complaint that she worked 2,590 hours from July, 1970 through December 22, 1972, and that she is entitled to $9,840.50 as minimum wages and overtime due her, as well as an equal amount for liquidated damages and costs and attorney's fees.

The defendant entered a denial of the allegations made in the complaint, and in addition filed a counterclaim for $150,000, stating that through conversion, embezzlement or improper and reckless handling of defendant's assets and money, plaintiff wrongfully deprived defendant of that amount.

Plaintiff was originally employed by the defendant as a commission saleswoman of sand in 1962. She was offered a position at the Lees Lane Sand and Gravel Pit and Land Fill operation owned by the defendant at a salary of $85 per week, with $25 a week additional to be paid for automobile expenses incurred by her in selling sand to customers and making trips to the bank. At the time she entered into this agreement, the plaintiff knew that the hours involved would be as much as 60 per week, since the operation of the defendant at the Lees Lane location was open from 7 a. m. until 5 p. m. six days a week. No agreement was made that she would work a 40 hour week, but subsequent to her appointment, she became dissatisfied with her salary and often complained to the defendant.

In March, 1972, the plaintiff received a raise of $30 per week, and the two checks were combined, resulting in a take-home pay of $140. In December, 1972, her pay was raised to $170 per week and she resigned on December 22nd of that year.

Plaintiff was charged with several responsibilities in the position which she held during the period in question. She basically performed as a dispatcher of the trucks which were removing sand, dirt and top soil from the Lees Lane Pit, and which were also bringing trash and garbage to be disposed of at the land fill. In this connection, she acted also as a weighing clerk who would weigh the trucks as they came over a scales which was located immediately adjacent to the scale house where plaintiff was stationed. It was the plaintiff's responsibility also to make out three tickets for every truck that entered or left the premises, showing the weight of the loads carried by them, and the amount to be billed them. She also handled the preparation of the bills and invoices for credit customers and received cash from the noncredit customers. She kept no safe in the office, and it was her duty to deposit the cash receipts at a bank, which she would do from two to three times per week.

Plaintiff, in her capacity as dispatcher, and in light of the illness of Mr. Joe Hofgesang, President of the defendant until March, 1972 when he died, exerted considerable influence and control over those persons who were allowed to truck sand and other materials out of the gravel pit and land fill. As evidence of this influence, S. W. Corum, a trucking operator, paid the plaintiff, at first, one cent per ton for every load of sand he hauled out of the Lees Lane location, and then, in 1971, increased the amount to two cents per ton. The plaintiff's tax returns reflect in 1970 she received $351 from this arrangement, and in the two succeeding years $1,228 and $3,758 respectively. Neither plaintiff nor Corum communicated the fact of this arrangement to Hofgesang or any other officers of the defendant corporation.

During the time of her employment, plaintiff always reported for work at 7 a. m. and worked until 5 p. m. at least five days per week. As to Saturdays there is some conflict in the testimony, but the weight of it is to the effect that plaintiff would work until 3 p. m. on Saturdays during the winter and 5 p. m. at other times of the year. Also, she had an arrangement with Marlene Cook,

who was an employee of the defendant, to work alternate Saturdays for the period 1970–1971. This arrangement terminated when the plaintiff discharged Ms. Cook for failure to report on Saturday on three or four occasions.

Defendant does not basically raise any issue with the plaintiff as to the amount of time she worked, but has taken the position that she is not entitled to any overtime pay, and that the reason her pay was not raised for almost two years was due to the suspicion that she was embezzling or converting money of the company to her own use. In support of this suspicion, evidence was introduced to the effect that plaintiff had complete charge of the billing and ticketing procedures at the land fill operation and, therefore, it was quite possible for her to have underreported the amount of cash receipts by simply failing to report the correct amount of tickets made out by her. To buttress this theory, the defendant sent an investigator, Paul Lynch, who reported that he made a visual check of all the trucks going in and out of the land fill and that the number he observed was greater than the number for whom the plaintiff made out tickets. Also, it was shown that plaintiff would place money in coca cola bottles and in holes in the wall at the land fill operation, and that on several occasions, money was taken from these locations amounting to as much as $1,000 without any evidence of any breakin to the office.

There was also testimony to the effect that there were some discrepancies as to billing of credit customers also noted in the main office of the defendant, but while these discrepancies were frequent the defendant has not pointed to any substantial loss occurring as a result therefrom.

[1] As a general principle, the courts have held that the Fair Labor Standards Act, hereinafter the "Act" is to be construed liberally in favor of the employee, and that any exemptions which are sought by the employer must be strictly construed. In keeping with these principles, the courts have been very strict in denying to the employer setoffs and recoupments, as well as in holding that the right to a minimum wage cannot be waived by agreement. See *Mitchell v. Kentucky Finance Company,* 359 U.S. 290, 79 S.Ct. 756, 3 L.Ed.2d 815 (1959); *Mitchell v. Turner,* 286 F.2d 104 (5th Cir. 1960); *Wood v. Meier,* 218 F.2d 419 (5th Cir. 1955); *Handler v. Thrasher,* 191 F.2d 120 (10th Cir. 1951); *Caserta v. Home Lines Agency, Inc.,* 273 F.2d 943 (2nd Cir. 1959).

One apparent exception has been recognized, which is applicable here, and that is where an employee takes money belonging to his employer or misappropriates it, then the employer may recover that money, since it is not money which would reduce the amount of the employee's wages. See *Mayhue's Super Liquor Stores, Inc. v. Hodgson,* 464 F.2d 1196 (5th Cir. 1972).

One other general principle accepted by the courts has been that if an employee who is covered by the Act agrees to work more than 40 hours a week for a salary based on the number of hours worked, then the amount of overtime must be computed by dividing the number of hours agreed to be worked into the salary, and, thus, reaching an hourly wage and then multiplying that hourly wage by one and one-half times any hours worked in excess of 40. See *Overnight Motor Company v. Missel,* 316 U.S. 572, 62 S.Ct. 1216, 86 L.Ed. 1682 (1942). Plaintiff is, therefore, erroneous in her contention that she is entitled to have her salary divided by 40 hours and then multiplied by one and one-half as to every hour worked over 40.

The defendant has not pleaded any type of exemption from coverage under the Act. This is required under Rules 8(c) and 12(b), Federal Rules of Civil Procedure. See *Beechwood Lumber Company v. Tobin,* 199 F.2d 878 (5th Cir. 1952) and *Wirtz v. C. & P. Shoe Corporation,* 336 F.2d 21 (5th Cir. 1964), and the cases cited in footnote 1 on p. 26 of that opinion. It now contends in its brief that it is entitled to an exemption

on the grounds that the plaintiff was employed in an administrative or executive capacity within the meaning of 29 U.S.C. § 213(a)(1). Although the cases cited above preclude the Court from reaching this question on the merits, it is appropriate to observe that there is some doubt as to whether plaintiff's employment would meet either the long or the short test discussed in *Hodgson v. Penn Packing Company*, 335 F.Supp. 1015, at p. 1020 (E.D.Pa.1971).

 Since the defendant kept no records as to the amount of time plaintiff worked, plaintiff is not required to prove with precision her claim. See *Rural Fire Protection Company v. Hepp*, 366 F.2d 355 (9th Cir. 1966) and *Wirtz v. Harrigill*, 328 F.2d 963 (5th Cir. 1964). The Court finds that during the period of her employment at the land fill, plaintiff worked a total of 2,686 overtime hours. This finding is based on testimony that establishes that from March, 1970 to July, 1971, plaintiff worked 60 hours a week, with the exception of three winter months in which she worked 58 hours, and that for the period July, 1971 to July, 1972, she averaged 56 hours per week, and from July, 1972 until her resignation she worked 60 hours a week.

Title 29 U.S.C. § 255, as amended in 1966, provides that any cause of action for unpaid minimum wages, unpaid overtime compensation, or liquidated damages shall forever be barred unless commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful action may be commenced within three years after the cause of action accrued.

The complaint in this action was filed on June 27, 1974; therefore, if defendant is liable for a willful violation, her cause of action accrued on June 27, 1971. If the defendant did not act willfully, then the cause of action accrued on June 27, 1972. See *Brennan v. Heard*, 491 F.2d 1 (5th Cir. 1974).

 *Brennan v. Heard, supra; Coleman v. Jiffy June Farms, Inc.*, 458 F.2d 1139 (5th Cir. 1971); and *Brennan v. J.*

*M. Fields, Inc.*, 488 F.2d 443 (5th Cir. 1973) establish that an employer acts willfully and subjects himself to the three year liability provision if he knows or has reason to know that his conduct is governed by the Act. Neither a good faith belief in the lawfulness of his wage and overtime regulations nor ignorance of their invalidity shields the employer from the additional year of liability.

Plaintiff had, on several occasions during the time that she was employed by the defendant, complained concerning the inadequacy of her wages, and the inference is strong that she considered her wages inadequate because of the long hours she worked each week. Counsel for defendant knew of these complaints and knew also that the defendant had settled a case with the Wage and Hour Division of the Department of Labor for overtime pay due several of its employees. Counsel explained at the trial that the reason any settlement of her overtime wage claims was not incorporated into the wage settlement was due to his belief that plaintiff received far more than any minimum wage from a number of sources, and that she also had received money that she didn't have any business receiving. He then stated that he had heard a number of times that she was stealing money, having been told of this before Joe Hofgesang's death, which occurred in March, 1972.

 We perceive that there was no negligence on the part of the defendant in failing to pay the plaintiff overtime, and that the failure to pay was intentional and, hence, willful within the meaning of the Act. It is true that the defendant may have had grounds to believe prior to plaintiff's resignation that she was converting funds which belonged to it to her own use, although the proof offered at trial on that issue was not of a caliber sufficient to warrant the Court holding that she had actually defalcated, with the exception of the commissions received by her from S. W. Corum, which will be discussed later in this opinion. Defendant's remedy, rather

than refusing to pay the plaintiff overtime, would have been to terminate her employment.

■ Plaintiff did not specifically state in her complaint that defendant willfully violated the provisions of the Fair Labor Standards Act. However, her pleadings did ask for overtime compensation for a period of more than three years, and no objections were made to the evidence concerning the question of willfulness at the trial. We conclude, pursuant to the provisions of Rule 15(b), Federal Rules of Civil Procedure, that the parties joined issue on the question of willfulness, and that plaintiff is entitled to rely upon the three year statute in light of the defendant's knowledge that the Fair Labor Standards Act was in the picture, and that she was working overtime hours, and in light of its apparent failure to make an investigation or do any legal research prior to trial with respect to her alleged exemption from coverage.

We have computed plaintiff's overtime compensation as being a total of $4,000.40 and, of course, if she is entitled to liquidated damages, she is entitled to double that amount. The computation was arrived at in the following manner. For the period June 27, 1971 to March, 1972 the Court determined that plaintiff worked 480 overtime hours, and that during that time her basic wage was $1.83 per hour and her overtime should then be computed at $2.75 per hour. For the period March, 1972 to July, 1972 the Court computed the plaintiff's base wage as being $2.50 per hour and her overtime rate at $3.75 per hour, with a total overtime hours worked of 272. For the final period July, 1972 through the middle of December, 1972, plaintiff's base wage was $2.33 per hour and her overtime wage was $3.50 per hour and the Court estimated her total overtime hours during that time to be 350.

■ Plaintiff's claim for liquidated damages is governed by 29 U.S.C. § 260 and by the holding of the Sixth Circuit Court of Appeals in *McClanahan v.* *Mathews,* 440 F.2d 320 (1971). In that case the court held that 29 U.S.C. § 260 (1964) grants the court discretion to award in liquidated damages, or a lesser amount than the amount of the overtime wages withheld, where the delinquent employer has sustained a " 'plain and substantial burden of persuading the court by proof that his failure to obey the statute was both in good faith and predicated upon such reasonable grounds that it would be unfair to impose upon him more than a compensatory verdict' ", citing *Rothman v. Publicker Industries,* *Inc.,* 201 F.2d 618, 620 (3rd Cir. 1953); *Wright v. Carrigg,* 275 F.2d 448, 449 (4th Cir. 1960); *Caserta v. Home Lines Agency, Inc.,* 273 F.2d 943, 947 (2nd Cir. 1959). In the absence of such proof, the district court has no power or discretion to reduce an employer's liability for the equivalent of double unpaid wages. See *McClanahan v. Mathews, supra.*

■ In the instant case, defendant's only good faith defense is based on its defalcation theory which we have previously discussed at some length. For the reasons stated with regards to our comments upon willfulness, we hold that the defendant's failure to pay overtime compensation was not in good faith and predicated upon reasonable grounds as is required by *McClanahan v. Mathews, supra.*

■ We come now to the defendant's counterclaim and observe that it is virtually undisputed that the plaintiff received $5,335 in commissions from S. W. Corum as a direct result of her employment with the defendant. The cases are clear that:

"One who acts as agent for another is not permitted to deal in the subject matter of the agency for his own benefit without the consent of the principal.[1] [Cases cited in footnote 1] Profits realized by an agent in the execution of his agency belong to the principal in the absence of an agreement to the contrary. The agent is bound to a high degree of good faith toward his

employer, and is not entitled to avail himself of any advantage that his position may give him to profit at the employer's expense beyond the terms of the employment agreement.[2]" [Cases cited in footnote 2].

See *Byer v. International Paper Company,* 314 F.2d 831, at p. 833 (10th Cir. 1963).

Under the holding of that case and the authorities cited in the footnotes on p. 833, defendant is entitled to recover the sum of $5,335 from the plaintiff by virtue of her extracting a secret gain for herself from a third party with whom she dealt on behalf of her employer. Reducing the amount awarded to the plaintiff by the amount awarded to the defendant on its counterclaim, we conclude that there is a net sum of $2,745 owing to the plaintiff, Opal M. Conklin.

Coming finally to the question of attorney's fees, we note that plaintiff's attorney requests $1,500. The criterion for appraising attorney's fees is set out at length in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir. 1974). We believe that it would be appropriate for counsel for parties to submit affidavits with respect to the attorney's fee question in light of the criterion set out in *Johnson v. Georgia Highway Express, Inc., supra,* and that this be done by November 15, 1975, at which time the matter will stand submitted.

An interlocutory judgment in compliance with these findings of fact and conclusions of law has been submitted herewith.