Wayne STEWART, Appellant,

v.

KENTUCKY PAVING COMPANY, INC., Appellee.

Court of Appeals of Kentucky.

Oct. 21, 1977.

Raymond L. Suell, Preston L. Terry, III, Louisville, for appellant.

Eugene H. Alvey, Louisville, for appellee.

Before GANT, VANCE and WILHOIT, JJ.

GANT, Judge.

This is an appeal from a judgment of the Jefferson Circuit Court holding the appellant, Wayne Stewart, and James E. Keene jointly and severally liable to the appellee for the sum of $5,847.00.

The appellee, Kentucky Paving Company, Inc., and a subsidiary company known as the Kentucky Garage Builders are operated out of the same offices and both are solely owned by John C. Chandler. Kentucky Paving's business consists of obtaining contracts for paving jobs, subcontracting for the furnishing of labor and materials, collecting for the job on completion and paying the subcontractor. Kentucky Garage Builders does nearly one million dollars worth of business annually and Kentucky Paving does perhaps one-tenth of that business.

James E. Keene was hired in March of 1971 by Chandler to run, manage and operate Kentucky Paving. The appellant, who is the son-in-law of Keene, was employed on a salary and commission basis as a salesman by Kentucky Garage Builders on February 7, 1972. In May of 1972, he was transferred to Kentucky Paving as a salesman where he remained for approximately one month when he was transferred back to Kentucky Garage Builders.

In the latter part of April, 1972, Stewart opened a checking account in the name of Custom Paving and in July, 1972, filed the necessary papers to do business as a proprietorship under the same name. This fact was never made known to Chandler. During the spring of 1972 the business of Kentucky Paving was not operating at its usual level of activity. Chandler had a conference with Stewart and Keene at which they stated that they were considering going into business in the paving field but that they were going to continue as employees of Chandler's companies and that they were not going to go into any other business. Some one week later Chandler and Keene entered into a "supplemental agreement" to his employment contract which prohibited him from competing with Kentucky Paving or Kentucky Garage Builders after termination of his employment.

In late June or early July Chandler discovered that the records of Kentucky Paving, such as leads, contracts and contract proposals, were missing and learned that they were being kept at Keene's apartment. Subsequently, on July 11, 1972, Chandler dismissed Keene from his employment and obtained the records, leads and contracts of Kentucky Paving which were then at Keene's apartment. Chandler testified that many leads were missing and that he obtained only eight of 22 that were logged in the books of the company on the dates of July 10 and July 11, 1972. Prior to going to Keene's apartment, Chandler went by Stewart's residence, dismissed him from his employment and obtained what materials and records Stewart had in his possession.

The lower court in its opinion, findings of fact and conclusions of law found that the appellant had a working relationship with the appellee, which relationship required a high degree of fidelity to the employer; that Keene and Stewart had performed several jobs totalling $14,618.00 which were

not done for Kentucky Paving; that Kentucky Paving Company made a gross profit of 40% on its contracts; and that Kentucky Paving had been damaged in the amount of $5,847.00. The lower court opinion mentioned eight jobs which were done by Keene and Stewart individually while under the employment of Kentucky Paving Company. The jobs and the evidence concerning them are as follows:

*Wash-O-Rama*—Contracted for November, 1971, completed the same month, paid for on December 22 by check made payable to J. E. Keene.

*Hopewell Baptist Church*—Contract between S. C. Watkins (subcontractor) and Hopewell Baptist Church dated November 9, 1971, work completed about April, 1972.

*Deluxe Marine Sales*—Contracted on May 26, 1972, over signature of Keene on behalf of Custom Paving.

*Mr. Transmission*—Contracted on May 26, 1972, over signature of Keene on behalf of Custom Paving.

*Zimlich*—Contracted on June 1, 1972, over signature of Keene on behalf of Custom Paving.

*Fugate*—Contracted on June 10, 1972, over signature of Keene for Custom Paving.

*Koster-Swope*—Contracted on July 7, 1972, over signature of Keene for Custom Paving.

*Valley Community Church*—Contract proposal signed by Keene for Kentucky Paving on June 23, 1972, but proposal was never accepted. Keene testified that after he left Kentucky Paving he was contacted by the church and Custom Paving did the job in the fall of 1972.

This Court has long held that an agency is a contract either express or implied, by which one of the parties confides to the other the management of some business to be transacted in his name, or on his account, by which the other assumes to do the business, and to render an account of it. The agent is a substitute or representative of his principal and derives his authority from him. *City of Covington v. Reynolds*, 240 Ky. 86, 41 S.W.2d 664 (1931). The appellant

during his employment with either Kentucky Garage Builders or Kentucky Paving Company had the authority to solicit paving contracts for his employer. In fact, Stewart received a commission for paving jobs contracted between the time of his initial employment and his transfer to Kentucky Paving as a salesman in addition to his regular salary and he testified that ". . . most generally I probably would have gotten it every week." Thus it cannot be denied that the appellant was an agent of Kentucky Paving Company from the date of his employment until his dismissal.

The cases of *Byer v. International Paper Co.*, 314 F.2d 831 (1963) and *Conklin v. Joseph C. Hofgesang Sand Co., Inc.*, 407 F.Supp. 1090 (W.D.Ky.1975) properly summarize the relation of principal and agent in situations similar to the case at bar. Therein the court stated:

> One who acts as agent for another is not permitted to deal in the subject matter of the agency for his own benefit without the consent of the principal. (Citing cases). Profits realized by an agent in the execution of his agency belong to the principal in the absence of an agreement to the contrary. The agent is bound to a high degree of good faith toward his employer, and is not entitled to avail himself of any advantage that his position may give him to profit at the employer's expense beyond the terms of the employment agreement. (Citing cases).

The highest court of this Commonwealth has had several opportunities to comment on the fiducial relationship between principal and agent. See *McAlister v. Whitford*, Ky., 365 S.W.2d 317 (1962); *Urban J. Alexander Co. v. Trinkle*, 311 Ky. 635, 224 S.W.2d 923 (1949); *Maxwell v. Bates*, 239 Ky. 600, 40 S.W.2d 304 (1931); *Hoge v. Kentucky River Coal Corporation*, 216 Ky. 51, 287 S.W. 226 (1926).

The case of *Hoge v. Kentucky River Coal Corporation, supra*, aptly summarizes the degree of loyalty required by one presently employed in a fiduciary capacity as follows:

Everyone—whether designated agent, trustee, servant or what not—who is under contract or other legal obligation to represent or act for another in any particular business or for any valuable purpose must be loyal and faithful to the interest of such other in respect to such business or purpose. He cannot lawfully serve or acquire any private interest of his own in opposition to it. This is rule of common sense and honesty as well as of law. The agent is not entitled to avail himself of any advantage that his position may give him to profit beyond the agreed compensation for his services. He may not speculate for his gain in the subject matter of the employment. He may not use any information that he may have acquired by reason of his employment either for the purpose of acquiring property or doing any other act which is in opposition to his principal's interest. He will be required to account to his employer or principal for any gift, gratuity or benefit received by him in violation of his duty, or any interest acquired adverse to his principal without a full disclosure, though it does not appear that the principal has suffered any actual loss by fraud or otherwise.

Neither Stewart nor Keene disclosed the appellant's ownership of Custom Paving or Keene's active solicitation for the company. Without such disclosure, the appellant clearly violated his duty of loyalty to his employer with regard to the jobs from which he profited. The judgment of the lower court attributes eight jobs to Keene and Stewart whereby they profited individually while they were in the employment of Kentucky Paving Company and Kentucky Garage Builders. However, a review of the record by this Court reveals that only seven of the eight jobs were either contracted or performed during the appellant's period of employment. The Wash-O-Rama job was contracted, completed and paid for by Keene alone prior to the appellant's initial employment with either of the companies owned by Mr. Chandler. Therefore the appellant cannot be held responsible for the profits gained from this job. The fact that the appellant may have received the other seven leads from his father-in-law and that he had contracted the jobs for Custom Paving does not affect appellant's duty to disclose his adverse interest in Custom Paving since his company acted upon the leads and profited from them during a period when he owed a duty of loyalty to his employer, John Chandler.

Appellant relies heavily on the case of *Aero Drapery of Kentucky, Inc. v. Engdahl,* Ky., 507 S.W.2d 166 (1974) for the proposition that a salesman does not stand in a fiducial relation to a corporation. In commenting upon the relationship between a co-defendant who was an officer and the corporation, the court stated that "The duties and liabilities of any agent to his principal are parallel to the nature of the particular office which the agent agrees to perform" and that there existed a fiducial relationship even without the statutorily imposed fiducial duty since he had a " . . . position of trust, the freedom of decision and access to confidential corporate information." The opinion did not reveal the duties and the nature of a salesman within the corporate structure of Aero Drapery but merely concluded without setting forth the reasons that there was no fiducial duty between this particular salesman and the corporation. Upon a review of the record in the present case, this Court is convinced that the ties Stewart had to the management of Kentucky Paving Company placed him in a position of trust and permitted him access to confidential corporate information. It is also worthy of note that the salesman in Aero Drapery was involved only in the organization of a competing business whereas Stewart organized and actively solicited contracts through his father-in-law, James Keene.

Appellant cites *Progress Laundry Company v. Hamilton,* 208 Ky. 348, 270 S.W. 834 (1925) and *Birn v. Runion,* 310 Ky. 805, 222 S.W.2d 657 (1949) for the contention that Stewart did not breach any obligation to Kentucky Paving Company by utilizing the leads to promote his own business. Both cases are distinguishable in that the em-

ployee had resigned prior to the solicitation of clients for a competing business. With regard to this distinction, the court in *Aero Drapery,* supra, stated:

After the termination of his fiduciary relationship he is allowed the freedom to compete, and he may carry with him his personal experience, enterprise, and knowledge, but he may not use prior fiducial confidences to profit at the expense of his former employer.

For the above stated reasons, the judgment of the lower court is affirmed in part and reversed in part with directions to modify the judgment in accordance with this opinion.

All concur.