**DSG CORPORATION,
Plaintiff-Appellant,**

v.

**Frederick E. ANDERSON, Edward W. Mitura, and Hwa Ja Mitura,
Defendants-Appellees.**

**No. 84–5179.**

United States Court of Appeals, Sixth Circuit.

Argued Nov. 26, 1984.

Decided Feb. 15, 1985.

Rehearings Denied March 18, 1985.

W. Douglas Myers, Myers & Hicks, Hopkinsville, Ky., James L. Young, argued, Young, Scanlon & Sessums, Jackson, Miss., for plaintiff-appellant.

J. Daniel Kemp, argued, Turner, Dixon & Kemp, Paul K. Turner, Hopkinsville, Ky., for defendants-appellees.

Before KEITH and NATHANIEL R. JONES, Circuit Judges, and CELEBREZZE, Senior Circuit Judge.

CELEBREZZE, Senior Circuit Judge.

In this diversity of citizenship case, plaintiff-appellant DSG Corporation (DSG) appeals from a jury verdict in favor of defendants-appellees Frederick Anderson (Anderson), Edward Mitura (Mitura), and Hwa Ja Mitura (Mrs. Mitura). DSG claimed that Anderson and Mitura, aided and abetted by Mitura's wife, Hwa, breached their fiduciary duty to DSG by competing with it on a bid for a food service contract while employed by the company. DSG asserts that the district court's instructions emphasized improperly the employee-fiduciary's freedom to compete with his employer once the employment relationship is terminated and failed to instruct the jury adequately concerning an employee-fiduciary's duty while employed. We believe that the instructions viewed as a whole were confusing, misleading, and prejudicial. Accordingly, we vacate the verdict and remand for a new trial.[1]

DSG is in the government food service contracting business. John Swindle is the chief executive officer while Anderson, whose job it was to survey contracts in preparation for a bid, was second in com-

1. Although DSG raises several assignments of error on appeal, we conclude that, except for the jury instruction issue addressed in this opinion, all are without merit.

mand. Mitura, who had been employed by DSG for approximately three months at the time of the alleged breach, was responsible for managing the Fort Riley, Kansas contract. Neither Anderson nor Mitura were officers or part owners of DSG.

In early November 1982, the food service contract at Fort Campbell, Kentucky became available for bidding. Swindle told Anderson to survey the contract in order to compile sufficient information for a bid. Mitura informed Anderson of his intention to bid personally on the contract and, on November 8, both Anderson and Mitura toured the Fort Campbell facility with other prospective bidders. Although Anderson would routinely make on-site inspections in preparation for compiling a DSG bid, Mitura had no responsibility to assist him in this endeavor. After the Fort Campbell tour, Mitura began to assemble a bid for submission on his own behalf; he consulted an accountant, met with an acquaintance concerning the cost of workmen's compensation for the project and pursued financing.[2] Similarly, Anderson consulted an accountant, Larry Golden, for assistance in calculating the cost per hour to be utilized in a bid. Golden calculated that performance of the Fort Campbell contract could be projected at a man-hour cost of $7.78. Anderson provided Mitura with this figure; Mitura paid Golden's bill.[3]

On November 15, Anderson spoke with Swindle and proposed that DSG, Anderson, and Mitura bid jointly for the Fort Campbell contract. Swindle rejected the proposal and indicated that Anderson and Mitura should terminate their employment with

DSG if they planned to compete for the bid. Anderson assured Swindle that he would not join Mitura in submitting a competing bid and gave Swindle a completed bid document form which was attached to Golden's worksheets. Other than this discussion, Anderson apparently failed to disclose to Swindle Mitura's intention to bid on the Fort Campbell contract.

On November 16, Swindle mailed DSG's bid for the Fort Campbell project. Six days later, Mitura submitted a bid in the name of his wife, d/b/a KIME Enterprises, using the $7.78 per man-hour figure obtained from Anderson. Mitura telephoned Swindle on November 23, informed him that he had submitted a bid, and quit his job, effective immediately. When the bids were opened on November 24, the parties learned that Mitura's bid, which was 4.4% less than that of DSG, was lowest among those submitted.[4] Anderson resigned from DSG on December 12, thereafter providing Mitura with expertise in preparing a pre-award survey on the Fort Campbell project; the contract was subsequently awarded to Mitura.

DSG based its lawsuit on the assertion that Anderson and Mitura breached their fiduciary duty to the company by failing to reveal material information to Swindle, by using improperly confidential information obtained in the course of employment, and by submitting intentionally a competing bid on the Fort Campbell contract. Concerning the obligations an employee-fiduciary owes to his employer,[5] the court instructed the jury that both Anderson and Mitura

2. Based upon conversations with Mitura, the bank included in the loan application, as part of the collateral, keyman life insurance on both Mitura and Anderson. According to DSG, this is persuasive evidence that both Mitura and Anderson were involved in the alleged attempt to underbid DSG for the Fort Campbell contract.

3. The defendants maintain that the $7.78 cost per man-hour figure was "relatively insignificant" in compiling the bid. The important information, according to the defendants, was the number of hours estimated to perform the contract. While defendants' contention may or

may not be true, this is an issue of fact and, therefore, to be decided by the jury.

4. DSG's bid was fourth from the lowest. Based upon this fact, the defendants assert that even if the KIME bid had not been made, DSG would not have been awarded the contract and, therefore, DSG suffered no damages. However, if, as asserted by DSG, Anderson and Mitura kept relevant information from Swindle, this could have affected materially the company's bid. Accordingly, we reject the defendants' contention regarding DSG's position among the bidders.

5. The trial court obviously assumed that both Anderson and Mitura were employee-fiduciar-

had a duty of loyalty and faithfulness to [their] employer, DSG Corporation, so long as [they were] employed by the Company. This duty, however, did not prevent [them] from engaging in a competing business after termination of [their] employment.... If you are satisfied from the evidence that Edward Mitura or Frederick E. Anderson, or both of them, failed to comply with their duties and that such failure was a substantial factor in causing the loss or damage to DSG Corporation, you shall find for DSG Corporation.

DSG objected to this instruction, arguing that the focus should have been on the defendants' duty while employed. Specifically, DSG complained that the instruction implied that Anderson and Mitura could properly set up the contract while employed by DSG as long as they terminated their employment before the contract was actually awarded. The court agreed to amend the jury instructions as follows:

Please disregard the previous substantive instructions and follow them as I now instruct you.

The defendant, Edward Mitura had a duty of loyalty in faithfulness to his employer, DSG Corporation, so long as he was employed by that company.

The duty, however, did not prevent Mitura from engaging in a competing business after the termination of his employment. After termination of his employment, he is allowed the freedom to compete and may carry with him his personal experience, enterprise and knowledge, but he may not use prior *fiducial confidences* to profit at the expense of his former employer.

The defendant, Frederick E. Anderson, had the same duty of loyalty and faith-

fulness to his employer, DSG Corporation, so long as he was employed by that company.

After the termination of his employment, he is allowed to carry with him the freedom to compete. He may carry with him his personal experiences, enterprise and knowledge, but may not use confidential or *fiduciary confidences* to profit at the expense of his former employer. (emphasis added).

On appeal, DSG contends that the term "fiducial confidences" is a term of art, not readily understandable to a jury of laymen and, therefore, the court erred in failing to define it. Moreover, DSG maintains that the instruction once again conveyed the impression that Anderson and Mitura could compete with DSG as long as they terminated their employment before commencing the Fort Campbell contract. Finally, DSG argues that the instruction was phrased so that the jury could not determine what previous instructions were to be disregarded. According to DSG, therefore, the instruction was an incomplete, confusing, and misleading statement of Kentucky law.[6]

■ Under Kentucky law, jury instructions should be simple, *Whorton v. Commissioner*, 570 S.W.2d 627, 631 (Ky. 1978), *rev'd on other grounds*, 441 U.S. 786, 99 S.Ct. 2088, 60 L.Ed.2d 640 (1979), and the Kentucky Supreme Court has gone so far as to indicate that they should provide "only the bare bones," *Cox v. Cooper*, 510 S.W.2d 530, 535 (Ky.1974). Nevertheless, "instructions should not give undue prominence to certain facts or issues." *Croushorn Equipment Co., Inc. v. Moore*, 441 S.W.2d 111, 115 (Ky.1969). *See also Kavanaugh v. Daniels*, 549 S.W.2d 526, 528 (Ky.Ct.App.1977). Thus, the "bare

---

ies. However, Kentucky law suggests that not all employees owe a fiduciary obligation to their employer. *See Aero Drapery of Kentucky, Inc. v. Engdahl*, 507 S.W.2d 166, 168 (Ky.1974). Because no objections were made by either party concerning this question, we decline to consider the issue. In any event, the jury is responsible for determining whether Anderson and Mitura owed fiduciary obligations to DSG.

6. Contrary to the defendants' assertions, DSG made timely objections to the court's instructions. In response to the court's offer to incorporate DSG's suggestions into the second instructions, DSG indicated clearly that it wanted to maintain its objection. Accordingly, we believe that DSG preserved properly this issue for appeal.

bones" approach does not prevent a court from giving instructions regarding material issues raised by a litigant's pleadings and proof at trial, *Old Colony Insurance Co. v. Reynolds,* 256 S.W.2d 362, 364 (Ky.1953), or from defining technical terms not commonly understood by a lay jury, *see Herring v. Lunderman,* 302 Ky. 271, 275, 194 S.W.2d 506, 508 (1946); *Lewis v. Wood,* 295 Ky. 134, 136, 173 S.W.2d 983, 984 (1943). In this case, we must apply these principles to determine whether the trial court's instructions "fairly and adequately" presented the issues to the jury. *Nolan v. Greene,* 383 F.2d 814, 816 (6th Cir.1967). *See also Carruba v. Transit Casualty Co.,* 443 F.2d 260, 264 (6th Cir.1971).

▉ Generally, an agency relationship may arise in an employment context when the employer permits the employee to transact business in his name. *Stewart v. Kentucky Paving Co., Inc.,* 557 S.W.2d 435, 437 (Ky.Ct.App.1977). When an agency relationship is created, the employee-fiduciary must be loyal and faithful to the interests of the principal and may not "acquire any private interest of his own in opposition to it." *Hoge v. Kentucky River Coal Corp.,* 216 Ky. 51, 54, 287 S.W. 226, 227 (1926). Thus, an employee "may not speculate for his gain in the subject matter of his employment" by using information acquired in the course of employment against his employer's interests. *Id.* A fiduciary is further obligated to disclose to his employer any information, gained from whatever source, which could damage the corporation. *Aero Drapery of Kentucky, Inc. v. Engdahl,* 507 S.W.2d 166, 169 (Ky. 1974). In this regard, an employee-fiduciary may be liable to the employer for any gain derived by establishing a competing interest without full disclosure to the employer, even if the employer has suffered no loss. *See Hoge v. Kentucky River Coal Corp.,* 216 Ky. 51, 54–55, 287 S.W. 226, 227 (1926). As recognized by the district court, however, an employee-fiduciary may compete with his employer once the fiduciary relationship is terminated, as long as "prior fiduciary confidences" are not used to the company's detriment. *Aero Drapery of*

*Kentucky, Inc. v. Engdahl,* 507 S.W.2d 166, 170 (Ky.1974).

▉ Based upon these principles of Kentucky law, DSG asserted that, as fiduciaries, Anderson and Mitura breached their duty by failing to apprise Swindle of relevant information relating to the Fort Campbell bid, by using confidential information in compiling Mitura's bid, and by establishing a competing enterprise while employed. If DSG's assertions are correct, Anderson and Mitura are liable under Kentucky law. The district court's instructions, however, failed to inform the jury of the duties owed by an employee-fiduciary. The court's initial instruction related simply that Anderson and Mitura owed a "duty of loyalty and faithfulness" which did not prevent them from competing with DSG after termination of their employment. The court's subsequent instruction did not alleviate the problem. The jury was not informed that the duty of loyalty and faithfulness includes the obligation not to act against the employer's interests, *Stewart v. Kentucky Paving Co., Inc.,* 557 S.W.2d 435, 437–38 (Ky.Ct.App.1977), not to establish a competing enterprise until after the employment relationship is terminated, *Aero Drapery of Kentucky, Inc. v. Engdahl,* 507 S.W.2d 166, 169 (Ky.1974), and finally, requires the employee-fiduciary to disclose to the employer any information which could damage the company, *id.* Moreover, in describing an employee-fiduciary's freedom to compete following termination of employment, the court recited merely that the former employee could not take advantage of prior "fiducial confidences." Although, the term "fiducial confidence" may be critical to a fair evaluation of DSG's claims, the district court failed to provide the jury with any guidance concerning what the term means.

In our view, the court's instructions, viewed in their entirety, permitted the jury to conclude incorrectly that any acts of Anderson and Mitura which were against the interests of DSG were permissible, as long as their employment was terminated

before the contract was actually awarded. Moreover, the instructions did not inform adequately the jury as to what obligations are owed by an employee-fiduciary to his employer. Consequently, we believe that the jury was unable to assess fairly DSG's claim that Anderson and Mitura breached their fiduciary duty.[7] Such error is prejudicial. Accordingly, this case is reversed and remanded for further proceedings consistent with this opinion.

---

7. Under Kentucky law, an individual "who knowingly aids and abets a fiduciary to make a secret profit is jointly liable with such fiduciary." *Lappas v. Barker,* 375 S.W.2d 248, 252 (Ky.1963). Thus, Mrs. Mitura's liability depends on whether Anderson and Mitura breached their duty to DSG. In this regard, there is no assertion that the instruction given by the court concerning Mrs. Mitura was erroneous.