NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0935n.06

No. 11-5561

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

*Aug 22, 2012*

LEONARD GREEN, Clerk

MAZAK CORPORATION,               )
                                 )
        Plaintiff-Appellee,      )
                                 )
                                 )    ON APPEAL FROM THE UNITED
v.                               )    STATES DISTRICT COURT FOR THE
                                 )    EASTERN DISTRICT OF KENTUCKY
WILLIAM KING,                    )
                                 )
        Defendant-Appellant.     )
                                 )

Before:  KEITH, GIBBONS, and DONALD, Circuit Judges.

**JULIA SMITH GIBBONS**, **Circuit Judge.**  WilliamKing served as Mazak Corporation's Vice President and Controller for fifteen years.  After King left Mazak, it learned that he held ownership interests in companies that did business with Mazak, allowing him to derive substantial secret profits.  Mazak brought suit alleging King breached his fiduciary duties, and the district court granted judgment as a matter of law in Mazak's favor.  We affirm.

**I.**

King worked as Mazak's Vice President and Controller from 1990 until 2005. Timothy Fisher was King's subordinate and was responsible for managing customer financing operations. In 1997, Louis Seta, Fisher's brother-in-law, formed United International of Cincinnati, LLC ("United") and Seta, through United, began consulting for Mazak on financing of Mazak equipment sales into Mexico and Canada.  The same year, Mazak began exploring options for establishing a financing subsidiary to provide financing for the sale of Mazak's equipment to its customers.

In 1997, United proposed that Mazak and United set up a limited liability company with each company holding a 50% share. Mazak Executive Vice President Tom Okita stressed to King that he was to stand behind a joint partnership with United and that King should participate in the partnership so that Mazak would retain a certain degree of control over it. Okita also told King that he wanted him to have direct involvement with Seta to ensure that United would book financing deals for Mazak.

In 1998, Mazak and United formed Mazak Financial Group, Ltd. ("MFG"), as a 50/50 partnership. Between 1998 and 2003, millions of dollars in Mazak equipment sales were financed through MFG, United or both.

During his employment with Mazak, King acquired ownership interests in both United and W.T. Financial, a subcontractor which performed certain billing and other administrative services for Mazak. King did not disclose these ownership interests to Mazak but told Okita that he "had strong influence and . . . involvement in [W.T. Financial]" and that he could "control the situation [with MFG] because [he was] involved in it."

In August 2003, Mazak and King signed a Separation Agreement that included mutual releases of all claims and covenants not to sue. The Separation Agreement contained a clause releasing King "from any and all claims, both known and unknown . . . including but not limited to claims of negligence, lack of objectivity, conflict of interests, and insufficient corporate disclosure." (R. 56-2, Ex. A, ¶ 3.) Pursuant to the Separation Agreement, King remained an employee of Mazak until the end of 2003, and then became a Mazak consultant until mid-2005.

Mazak became aware of King's ownership interest in United in June 2005, when United's tax returns, including Schedule K-1s for Seta, King, and Fisher, were produced in a separate litigation. Mazak then sued King in the Eastern District of Kentucky, asserting claims for, *inter alia*, breach of fiduciary duties, aiding and abetting breaches of fiduciary duties, fraud and breach of contract.

On October 29, 2007, the date set for the trial to begin, the court empaneled a jury, but then conducted a conference with the parties at which it addressed its interpretation of Kentucky law as requiring King to "make a full and complete disclosure [to Mazak] . . . of his holdings, the percent of income he was receiving, [and] the fact that he [was receiving] commission on what he [was] buying for Mazak . . . ." (R. 183, at 2–3.) The court held that the corporation had no duty to discover King's ownership of United and W.T. Financial and asked King if he could prove he was entitled to judgment on liability given the court's interpretation of Kentucky law. King's counsel conceded that King did not tell Mazak what his interests were or how much money he received in profit distributions. After King's counsel made a proffer of King's evidence, the court ruled that Mazak was entitled to judgment as a matter of law.

King received $1,510,738 in distributions from United, plus profit sharing contributions of $133,537, and Fisher received similar distributions totaling $1,490,738, plus profit sharing contributions of $133,537. King also received distributions from W.T. Financial in the amount of $204,346. Concluding that King was liable to Mazak for the profits both he and his subordinate, Fisher, had realized from their undisclosed ownership interests in United and W.T. Financial, the district court entered judgment in Mazak's favor in the amount of $3,472,896. (R. 299 at 1–3.)

**II.**

This court reviews *de novo* the district court's grant of judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(a). *Jackson v. FedEx Corporate Servs., Inc.*, 518 F.3d 388, 391–92 (6th Cir. 2008). "Judgment as a matter of law pursuant to Rule 50(a) is appropriate when a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." *Id.* at 392 (internal quotation marks and citation omitted).

"There are numerous instances where a legitimate conflict of interest exists between a fiduciary and his corporation." *Patmon v. Hobbs*, 280 S.W.3d 589, 596 (Ky. Ct. App. 2009) (citation omitted). Under Kentucky law, when an employee "is aware of a conflict between his private interest and the corporate interest, he owes the duty of good faith and full disclosure of the circumstances to the corporation." *Aero Drapery of Ky. Inc. v. Engdahl*, 507 S.W.2d 166, 169 (Ky. 1974). "If dual interests are to be served, the disclosure to be effective must lay bare the truth, without ambiguity or reservation, in all of its stark significance." *Id.* (citation omitted.)

In a factually similar case, we concluded that a corporate executive's failure to disclose the nature and extent of his involvement with an independent contractor violated his fiduciary duties. We held in *Innes v. Howell Corporation*, 76 F.3d 702, 715 (6th Cir. 1996), that the corporation's vice president "was required to disclose to the corporation any conflicts of interest, such as receiving payments from an independent contractor pursuant to a real property and services transaction in which the corporation [was] intimately involved." 76 F.3d at 715. We concluded that in order for the corporation to have consented to the vice president's receipt of consulting fees from the

4

corporation's independent contractor, he would have had to "give *full disclosure* of his consulting services and fees" to the corporation's president. *Id.* (emphasis added). The president's approval of the consulting arrangement in the absence of full disclosure of its nature and extent did not absolve the vice president of breach of fiduciary duties under Kentucky law. *Id.*[1]

Under Kentucky law as articulated in *Aero Drapery* and *Innes*, King was required to fully disclose both the fact that he owned parts of W.T. Financial and United and the profits he received as a result of those ownership interests. *See Innes*, 76 F.3d at 715. King concedes that he did not "lay bare the truth" of the nature and extent of his ownership interests in, or profits received from, these companies to anyone at Mazak. *Aero Drapery*, 507 S.W.2d at 169. After Okita told him to have "direct involvement" and "participation" with United and instructed him to maintain "control" over it, King acquired an ownership interest in United and did not tell Okita this; instead, he vaguely assured Okita that he could "control the situation" with MFG because he was "involved in it." Similarly, King told Okita that he had "strong influence" and "involvement" with W.T. Financial, but did not tell anyone at Mazak about his ownership interest in that company. King did not clarify that his "involvement" in these companies was as a part-owner who received substantial profits therefrom. As in *Innes*, King failed to disclose that he was simultaneously serving as a corporate officer and receiving payments from a company with which the corporation did substantial business.

---

[1] *Innes* acknowledged that it was "theoretically possible" for the corporation's president to give the vice president "a blank check to enter into any consulting arrangement," but the vice president did not "allege that any such broad waiver was ever given [only] that he told [the president] about the arrangement and [he] merely 'approved.'" *Innes*, 76 F.3d at 715. The same is true here. Crediting King's claim that Okita directed him to establish influence and control over United and W.T. Financial, we still cannot say that King was given the kind of "blank check" alluded to in *Innes*.

*See Innes*, 76 F.3d at 715. The district court correctly concluded that King breached his fiduciary duties to Mazak.

King argues that *Aero Drapery* should be distinguished from this case because Mazak directed and encouraged him to become involved with W.T. Financial and United. But King concedes that nobody at Mazak directed him to become *financially* involved in these companies. Okita's direction to King to control and influence United and to gain control of the company's problems with its subcontractors did not give King a blank check to do so in any manner he wished. And it clearly would have been material to Mazak to know that King chose to control these companies by investing in them and reaping substantial profits from them. *Cf. Foley v. Smith*, No. 2003-CA-000621, 2004 WL 1102335, at *1 (Ky. Ct. App. 2004) (unpublished) (holding that a fiduciary relationship—in this case created out of a joint tenancy—imposed a duty to disclose material facts).

The fact that United and W.T. Financial did not compete with Mazak for business does not change our analysis. *Innes* did not involve a competing company, and we still held that the employee breached his fiduciary duties by receiving undisclosed payments from a subcontractor. *Innes*, 76 F.3d at 715; *cf. Conklin v. Joseph C. Hofgesang Sand Co.*, 407 F. Supp. 1090, 1092, 1095–96 (W.D. Ky. 1975) (employer entitled to recover where employee received kickbacks from customers even though employee did not set up competing company). And contrary to King's assertion, actual damage to the corporation is not required to recover for breach of fiduciary duties. An employee who obtains a secret profit "will be required to account to his employer or principal for any . . . benefit received by him in violation of his duty . . . though it does not appear that the

principal has suffered any actual loss by fraud or otherwise." *Stewart v. Ky. Paving Co.*, 557 S.W.2d 435, 438 (Ky. Ct. App. 1977).

King notes that the Fourth Circuit declined to impose liability for breach of fiduciary duties where an employee failed to disclose to his employer the percentage of his ownership interest in one of the employer's suppliers. *Constr. Techniques, Inc. v. Dominske*, 928 F.2d 632 (4th Cir. 1991). But King's case is readily distinguishable from *Dominske*: King did not merely fail to disclose the percentage or extent of his interest in W.T. Financial and United—he failed to disclose that he had ownership interests in these companies at all. The *Dominske* court noted that Dominske's employer knew that he would profit from transactions with the supplier in which he held an interest—it just did not know how much he would profit, because it did not know he was a 50% owner. *Id.* at 638. By contrast, Mazak did not know King had ownership interests in W.T. Financial and United because King only told Okita that he had "influence" and "control" over these companies, not that this influence derived from his financial stakes in them. *Dominske* is of little aid to King.

Moreover, *Dominske*'s holding that a fiduciary need not disclose the full extent of his ownership interests in his corporation's suppliers appears contrary to the full disclosure requirement articulated in *Aero Drapery*. *See Aero Drapery*, 507 S.W.2d at 169 (holding that fiduciary must give "full disclosure" of conflicts of interest and "the disclosure to be effective must lay bare the truth without ambiguity or reservation in all of its stark significance."); *see also Innes*, 76 F.3d at 715 (applying *Aero Drapery* and holding that in order for corporation to have consented to vice president's receipt of consulting fees from the corporation's independent contractor, he would have

7

had to "give full disclosure of his consulting services and fees" to the corporation.) We do not believe the Kentucky courts would follow *Dominske*.[2]

**III.**

King argues that even if he did breach his fiduciary duties to Mazak, Mazak released him of all known or unknown claims for conflicts of interest and therefore he cannot be held liable. The district court held the release unenforceable, reasoning that for the release to be effective, King would have had to disclose to Mazak his ownership interests in United and W.T. Financial. We agree.

The Kentucky courts have not spoken on the precise issue in question: whether a release of all claims against a fiduciary is enforceable where the fiduciary failed to disclose material information when obtaining that release. However, the vast majority of state and federal courts have held that a release must be set aside if the fiduciary failed to make a full disclosure of all relevant facts to the beneficiary. 1 Restatement (Second), Contracts § 173; *Wal-Mart Stores, Inc. v. Coughlin*, 255 S.W.3d 424, 429 (Ark. 2007) ("[A] significant majority of other jurisdictions, both state and federal, have held that a fiduciary owes a duty of full disclosure when entering into a transaction with the fiduciary's corporation and that the fiduciary's failure to disclose material facts relating to a mutual release of claims between the parties is sufficient to set aside the release.")

---

[2]King also argues that we should look to Kentucky Revised Statute § 271B.8-310(1), which governs corporate directors' conflicts of interest, to discern the extent of King's fiduciary duties. But that statute does not apply here. King was not a director of Mazak—he was an officer. In the absence of Kentucky statutory authority governing a corporate officer's conflicts of interest, Kentucky common law—in this case, *Aero Drapery* and its progeny—governs. Therefore, King's argument that, pursuant to § 271B.8-310(1), the transactions between W.T. Financial and United and Mazak needed only to be "fair" to waive his conflicts of interest is not well taken.

(collecting cases). Under federal common law, a contract between a fiduciary and a beneficiary is voidable unless (1) it is fair on its terms and (2) "all parties beneficially interested manifest assent with full understanding of their legal rights and of all relevant facts that the fiduciary knows or should know." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1481 (6th Cir. 1989) (quoting 1 Restatement (Second), Contracts § 173) (internal quotation marks omitted). In a different context, the Kentucky Court of Appeals set aside a release obtained by a fiduciary where the fiduciary did not disclose to the beneficiaries all material facts. *See Hale v. Moore*, 289 S.W.3d 567, 573, 582–83 (Ky Ct. App. 2008) (declining to enforce releases signed by beneficiaries of estate where executrix failed to inform beneficiaries that they would incur additional tax liability if estate were administered under Pennsylvania law instead of Kentucky law). We believe that the Kentucky courts would embrace the majority view.

Accordingly, we believe the Kentucky courts would decline to enforce the release here. King did not disclose his ownership interests in United and W.T. Financial during his employment with Mazak or during the period when he served as a Mazak consultant. This information was clearly material to Mazak's willingness to release King of all known and unknown conflicts of interest. Because King did not tell Mazak about his ownership interests in W.T. Financial and United while procuring the Separation Agreement, the mutual releases and covenants not to sue contained therein are unenforceable.

King's reliance on *Wal-Mart Stores, Inc. v. Coughlin*, a case from the Arkansas Supreme Court, is misplaced. Coughlin, an executive, entered into a retirement agreement and release with his employer, Wal-Mart, which later discovered that Coughlin had conspired with subordinates to

misappropriate hundreds of thousands of dollars of cash and property. *Coughlin*, 255 S.W.3d at 426.

The release was broad and released Coughlin of known and unknown claims. *Id.* at 428. Wal-Mart

sued Coughlin for breach of fiduciary duty and other claims, arguing that he had a duty "to disclose

material facts of past fraud to the corporation before entering into a self-dealing contract," his

retirement agreement. *Id.* at 427.

Noting that the case presented an issue of first impression under Arkansas law, the court held

that "the failure of a fiduciary to disclose material facts of his fraudulent conduct to his corporation

prior to entering into a self-dealing contract with that corporation will void that contract and . . .

material facts are those facts that could cause a party to act differently had the party known of those

facts." *Id.* at 430–31. The court reversed the lower court's dismissal of Wal-Mart's complaint and

remanded for further proceedings. *Id.* at 431.

King relies on *Coughlin*'s conclusion that a jury must decide whether the "parties intended

the Release to bar claims of fraudulent inducement related to [his fiduciary] duty to disclose," *id.*,

and argues that Mazak's release of King from unknown conflicts of interest unequivocally shows

that the parties intended to release King of claims for breach of fiduciary duty. But Mazak did not

sue King for fraudulently inducing them to enter his Separation Agreement—it sued him for breach

of his fiduciary duties. *Coughlin* actually supports setting aside Mazak's release of King because

the *Coughlin* court endorsed the view that "a iduciary owes a duty of full disclosure when entering

into a transaction with the fiduciary's corporation and that the fiduciary's failure to disclose material

facts relating to a mutual release of claims between the parties is sufficient to set aside the release."

*Id.* at 429–31.

10

**IV.**

Finally, King claims that the district court erred in ordering King to disgorge the profits he received as a result of his ownership interests in United and W.T. Financial, because King's interests were not adverse to Mazak's. King's argument is without merit.

Kentucky law on this point is clear: "[p]rofits realized by an agent in the execution of his agency belong to the principal in the absence of an agreement to the contrary." *Stewart*, 557 S.W.2d at 437. An agent "will be required to account to his employer or principal for any gift, gratuity or benefit received by him in violation of his duty, or any interest acquired adverse to his principal without a full disclosure, though it does not appear that the principal has suffered any actual loss by fraud or otherwise." *Id.* at 438. King's argument that his participation in W.T. Financial and United benefitted Mazak is simply irrelevant under Kentucky law, as a principal need not be harmed to require his agent to surrender profits realized in the execution of his agency. *See id.*

The judgment of the district court is affirmed.