983 F.2d 1071
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Robert WHITESCARVER, Plaintiff-Appellee,
v.
WAL-MART STORES, INC., Defendant-Appellant,
Russellville Square Company, Carl D. Storey, Robert A.
Downing, and W.D. Maynard, Defendants.
 No. 92-5197.
 United States Court of Appeals, Sixth Circuit.
 Dec. 29, 1992.
 
 Before RALPH B. GUY, Jr. and RYAN, Circuit Judges, and CHURCHILL, Senior District Judge.*
 RYAN, Circuit Judge.
 
 
 1
 Robert Whitescarver sued Wal-Mart Stores, Inc. in a diversity action based in tort. Wal-Mart appeals from the judgment following a jury verdict in favor of Whitescarver, and alleges a number of errors for our consideration: 1) that the jury instruction on Wal-Mart's duty to its business invitees did not comport with Kentucky law regarding the form of instructions; 2) that the plaintiff should not have been allowed to recover for medical expenses paid by Medicare; 3) that testimony regarding plaintiff's medical expenses should not have been admitted because there was no apportionment between a preexisting injury and the injury at issue; 4) that the court abused its discretion in reconsidering an earlier order and allowing a certain expert witness to testify only three days before trial; and 5) that the expert's testimony should have been excluded because it was irrelevant.
 
 
 2
 Finding no error in the rulings of the district court, we shall affirm its judgment.
 
 I.
 
 3
 Robert Whitescarver has been a quadriplegic since a motorcycle accident in 1979. In 1988, he attempted to enter a Wal-Mart store in Russellville, Kentucky, using a ramp that he had in the past used without incident. At trial, Whitescarver maintained that the access ramp was too steep and the landing area too short, and that the combination caused him to roll back and tip over when the store door opened. The only part of his body that struck the pavement was his elbow, where he sustained an abrasion.
 
 
 4
 Whitescarver sought treatment at a variety of medical facilities. All but one doctor, Dr. Blumenkopf, could find no damage other than arthritic changes and a strain in the neck area as a result of the accident. Plaintiff sought to recover $62,280.38 as medical expenses resulting from the accident, which amount represented payment to all the medical providers he had consulted following the Wal-Mart accident. These bills were all paid by Medicare on behalf of the plaintiff. He sustained no out-of-pocket loss as a result of the accident.
 
 
 5
 As to plaintiff's medical expenses, Dr. Blumenkopf testified that although he had treated Whitescarver for several conditions that had existed prior to the Wal-Mart accident, all of the medical expenses resulted from the Wal-Mart accident:
 
 
 6
 Q. Okay. Doctor, just so the record is clear on this, let me see if I understand what role you feel that the fall from the wheelchair, the hyperextension injury in 1988 played, as far as the treatment which you provided to Mr. Whitescarver.
 
 
 7
 Can you tell the ladies and gentlemen of the jury how, in your opinion, based upon a reasonable medical probability, as to what role that fall played in the ultimate surgery that was performed and the other problems which you found?
 
 
 8
 A. Well, I consider the fact that it was the fall that created new problems for Mr. Whitescarver and then made it necessary for him to seek medical attention. And then precipitated his referral to us, and then our surgery.
 
 
 9
 So from the standpoint of what was the causal event in the present illness, to my mind, it was a post-traumatic injury, and therefore, the fall was the ultimate etiology of his situation at this time.
 
 
 10
 In February 1991, defendants other than Wal-Mart (which defendants are not parties to the appeal) were granted a motion in limine prohibiting the testimony of Frank Kondracki, a professional civil engineer and Whitescarver's liability expert. The testimony was excluded because Whitescarver failed to identify Kondracki as an expert until three months past the deadline imposed by the court's scheduling and discovery order. In June, the plaintiff filed a petition for reconsideration of this ruling. Wal-Mart filed no response. The motion was not heard until September 16, three days before the day set for trial. The district court reversed the earlier order and allowed Kondracki to testify, but denied Whitescarver's motion for a continuance. Wal-Mart, however, did not move for a continuance. In testifying, Kondracki made reference to the 1988 Kentucky Building Code, rather than to the Code in effect when the ramp was constructed in 1981 and 1982. He testified, however, that the Kentucky Building Code's provisions regarding ramp slopes did not change between 1981 and 1988. The plaintiff established during voir dire (and the same testimony was later adduced in front of the jury) that Kondracki was familiar with the 1980, 1981, and 1982 Codes, and that they were identical in relevant part to the 1988 Code.
 
 
 11
 Following the close of evidence, the jury was instructed regarding the respective duties of Wal-Mart and Whitescarver. The instruction concerning Wal-Mart's duty to business invitees was quite long; while it made no misstatements of law, it contained some unnecessary definitions and excess verbiage. In contrast, the instruction on Whitescarver's duty of ordinary care was short, simple, and to the point.
 
 
 12
 The jury returned a verdict in favor of the plaintiff, apportioning liability 80% to Wal-Mart and 20% to Whitescarver. A judgment was rendered in the amount of $125,000 for pain and suffering and $48,824.30 for reasonable expenses incurred by plaintiff Robert Whitescarver for hospital services, medical services, supplies, and medicine.[1]
 
 II.
 
 13
 When, as here, a federal court's jurisdiction is based solely on diversity of citizenship, the federal court must apply the law of the state in which it sits to substantive matters. Erie R. Co. v. Tompkins, 304 U.S. 64, 78 (1938). In this case, the law of Kentucky is the substantive law to be applied.
 
 III.
 
 14
 Wal-Mart first argues that because Kentucky law governs the substantive issues to be decided here, Kentucky's approach to jury instructions must be applied. In Kentucky, jury instructions should provide the "bare bones," that is, contain only the bare essentials of the law. See DSG Corp. v. Anderson, 754 F.2d 678, 681 (6th Cir.1985). Wal-Mart argues that the jury instruction relating to its duty of care to Whitescarver was long and confusing, and therefore completely at odds with the Kentucky bare-bones approach. Wal-Mart points to the much shorter instruction on Whitescarver's duty as being the ideal format. Wal-Mart claims that to instruct the jury as the court did overemphasized certain aspects of Wal-Mart's duty--although it neglects to specify which aspects were overemphasized--and as a result, the instructions were prejudicial. Wal-Mart does not contend that the instructions were an erroneous statement of Kentucky law.
 
 
 15
 Jury instructions are reviewed as a whole in order to determine whether they adequately inform the jury of the relevant considerations and provide a basis in law for aiding the jury in reaching its decision. Kitchen v. Chippewa Valley Schools, 825 F.2d 1004, 1010-11 (6th Cir.1987). A judgment can be reversed if the instructions, viewed as a whole, were confusing, misleading, and prejudicial. Beard v. Norwegian Caribbean Lines, 900 F.2d 71, 72-73 (6th Cir.1990). "[T]he critical inquiry is whether the instructions as a whole provide the jury with sufficient guidance concerning the issues to be tried." Teal v. E.I. DuPont de Nemours & Co., 728 F.2d 799, 802 (6th Cir.1984).
 
 
 16
 Robinson v. Ralph G. Smith, Inc., 735 F.2d 186 (6th Cir.1984), although not a diversity case, required application of Kentucky law. As here, the defendant in Robinson contended that the district court erred in giving specific and detailed instructions on negligence since "the required state practice is that the trial judge give only bare-bone instructions." The court stated, however, that it "[did] not ... consider this Kentucky practice to be binding on the federal district court." Id. at 192 (emphasis added). We agree. It is the duty of a federal court in a diversity case to articulate state law in a way that satisfies the court that the particular jury seated understands the law. The federal court has no obligation, though, to try to anticipate how a state court would phrase an instruction.
 
 
 17
 Moreover, Wal-Mart has failed to point to anything in particular about the instruction that was prejudicial. It does not name any aspect of the duty of care that it felt was overemphasized in the instruction, and it points to no misstatement of law. Applying the federal standard for prejudice requires the conclusion that although this instruction may be repetitious, it is not misleading, confusing, or prejudicial. Given that the defendant's only quarrel with the instruction is an undefined sense that it is too long, we conclude that the instruction did " 'fairly and adequately' present the issues to the jury." DSG Corp., 754 F.2d at 682.
 
 
 18
 Wal-Mart next argues that the court erred in allowing evidence of medical expenses as an element of damages recoverable by the plaintiff in his own name. It is uncontroverted that Whitescarver did not pay any of the medical expenses for which the jury awarded him damages; rather, the expenses were covered by Medicare. Kentucky law, however, has conclusively established that Whitescarver is entitled to these damages, irrespective of whether he has alerted Medicare to his lawsuit. The leading case is Our Lady of Mercy Hospital v. McIntosh, 461 S.W.2d 377 (Ky.1970):
 
 
 19
 A substantial part of [the plaintiff's] medical expenses of this injury was covered by Medicare. However, she was liable to the hospital for her medical expenses if Medicare did not cover them. The appellants argue that the United States is the only party entitled to recover the amount paid under Medicare and cite various sections of the United States Code in support thereof. We do not believe these sections control. .... [T]he appellants have not affirmatively demonstrated any basis for departing from the usual rule in such matters, [so] they have failed in the burden of establishing error of the trial court.
 
 
 20
 Id. at 379. The "usual rule" in Kentucky to which the court referred is the collateral source rule: an "injured person may recover medical and hospital expenses incurred on his behalf, at least where the expenses are paid pursuant to an agreement based upon the payment of premiums or contributions by or on behalf of the injured person." Id.; see also Daugherty v. Daugherty, 609 S.W.2d 127 (Ky.1980).[2]
 
 
 21
 Whether Whitescarver's medical expenses were recoverable as damages is a question of law for de novo review by this court. Our Lady of Mercy Hospital and Daugherty leave no room for debate on the issue; the court correctly allowed Whitescarver to recover all medical expenses as damages.
 
 
 22
 Wal-Mart next argues that because Whitescarver was a quadriplegic before the accident, and because he admits that only his elbow actually struck the pavement when he fell, it is prima facie unreasonable to suppose that he could have incurred some $62,000 worth of medical expenses stemming directly from his fall. It points to conditions that existed before the accident for which Dr. Blumenkopf treated Whitescarver, and argues that Dr. Blumenkopf did not adeuqately allocate between expenses arising from the preexisting condition and the new injury. Therefore, it concludes the testimony should not have been permitted. Cf. Duty v. United States Dep't of Interior, 735 F.2d 1012 (6th Cir.1984).
 
 
 23
 This court reviews a district court's decision to admit evidence for an abuse of discretion when the issue is the relevancy of the challenged evidence. Schrand v. Federal Pacific Elec. Co., 851 F.2d 152, 156-57 (6th Cir.1988). An abuse of discretion exists when the reviewing court is firmly convinced that a mistake has been made. In re Bendectin Litigation, 857 F.2d 290, 307 (6th Cir.1988), cert. denied, 488 U.S. 1006 (1989).
 
 
 24
 The defendant is essentially arguing that Dr. Blumenkopf's testimony on medical expenses should not have been admitted because it was not relevant. We disagree. The transcript shows that Dr. Blumenkopf opined that the entire amount of the medical expenses was caused by the plaintiff's accident at Wal-Mart. By testifying that the expenses were directly related to the plaintiff's Wal-Mart accident, he established the necessary relevancy nexus. Therefore, the district court did not abuse its discretion when it allowed the testimony.
 
 
 25
 Wal-Mart also argues that the district court abused its discretion by setting aside its order prohibiting Frank Kondracki's testimony only three days before trial. The lack of notice that Kondracki would testify worked extreme prejudice, Wal-Mart claims, because it could not adequately discover his testimony prior to trial.
 
 
 26
 Whether to admit or exclude opinion testimony is committed to the sound discretion of the trial court. Torres v. County of Oakland, 758 F.2d 147, 150 (6th Cir.1985). Ordinarily, one might conclude that for a district court to reverse an earlier decision only three days before trial, thus allowing an expert witness to testify, is an abuse of its discretion because the opposing party would be handicapped by an inability to prepare. In this instance, however, we do not so conclude. Wal-Mart was aware that Whitescarver's petition for reconsideration had been pending since June, and was therefore cognizant of the possibility that the earlier ruling would be changed. It filed no response in opposition to the petition. Furthermore, Wal-Mart did not request a continuance after receiving the district court's decision; neither did it request an opportunity for further discovery, nor attempt to take Kondracki's deposition.
 
 
 27
 In light of these circumstances, we cannot conclude that the district court's decision to allow Kondracki to testify was an abuse of discretion.
 
 
 28
 Wal-Mart finally argues that it was error for the district court to allow Kondracki to testify as to the ramp's compliance with building code standards by using the 1988 building code, when the ramp was constructed in 1981 and 1982.
 
 
 29
 The issue here is whether the 1988 building codes were relevant to the liability issue. We review the district court's decision to allow Kondracki to give his opinion based on the 1988 codes for an abuse of discretion. Torres, 758 F.2d at 150. Kondracki testified during a voir dire examination that the building code provisions as to ramp slope and landing size were the same in 1980 as in 1988. He further testified before the jury that he was familiar with the building code requirements in effect at the time the Wal-Mart ramp addition was constructed in 1982, and testified using those requirements for ramp slope and landing size. The relevance of Kondracki's testimony to the issue of liability was thus established. Therefore, the district court did not abuse its discretion in permitting Kondracki to testify using the 1988 and 1980 building codes.[3]
 
 III.
 
 30
 We conclude that the district court did not err in the rulings challenged by the defendant on appeal, and we accordingly AFFIRM.
 
 
 
 *
 The Honorable James P. Churchill, Senior United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 The medical expenses award reflects the 80%/20% apportionment of the entire amount of medical expenses that, according to Dr. Blumenkopf, were incurred
 
 
 [2]
 The "usual" collateral source rule is unaffected by the Kentucky statute that permitted Wal-Mart to introduce this evidence that Whitescarver's medical expenses were paid by a collateral source. Ky.Rev.Stat.Ann. § 411.188(1) (Baldwin 1992)
 
 
 [3]
 We note that, during oral argument, the attorney for Wal-Mart conceded that he could not represent that there was any substantial difference between the Code requirements for ramps in the various years