**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 09a0774n.06

**No. 07-3568**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

**Dec 08, 2009**

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| MAGICAL FARMS, INC., and MAJESTIC MEADOWS ALPACAS, INC., | ) ) ) | |
| Plaintiffs-Appellants, | ) ) | |
| v. | ) ) ) | On Appeal from the United States District Court for the Northern District of Ohio |
| LAND O'LAKES, INC., and LAND O-LAKES FARMLAND FEED, LLC, | ) ) ) | |
| Defendants-Appellees. | ) ) ) ) | |

BEFORE:    BATCHELDER, Chief Judge, DAUGHTREY, Circuit Judge, and
VAN TATENHOVE*, District Judge.

**VAN TATENHOVE**, District Judge. Magical Farms, Inc., and Majestic Meadows Alpacas,

Inc. (collectively "the Farms"), challenge four decisions made by the District Court during the course

of their litigation with Land O'Lakes, Inc., and Land O'Lakes Farmland Feed, LLC (collectively "the

Lakes"). For the reasons that follow, we **REVERSE** and **REMAND** for a new trial.

**I.**

The Farms raise alpacas. In the winter of 2003, they purchased alpaca feed from the Lakes.

As a result of eating this feed, many alpacas died or were injured. The alpaca feed had been

---

*The Hon. Gregory F. Van Tatenhove, United States District Judge for the Eastern
District of Kentucky, sitting by designation.

manufactured in the Lakes' Massillon plant, the same plant where chicken feed, containing an ionophore antibiotic ingredient called salinomycin, was manufactured. Salinomycin, which is extremely toxic to alpacas, contaminated the feed purchased by the Farms.

The Farms alleged negligence, negligence *per se*, strict liability in tort, and fraud in connection with the production of the alpaca feed. Prior to trial, the Lakes admitted that they negligently manufactured the alpaca feed, that the feed was defective because it deviated from design specifications at the time it left the manufacturer, and that the tainted feed proximately caused the deaths of 73 alpacas owned or boarded by Magical Farms that ingested the feed. Thus, the remaining issues before the jury were: (1) the amount of damages with regard to the 73 deceased alpacas; (2) causation as to the death of other deceased alpacas owned by Magical Farms and all Majestic Meadows' deceased alpacas; and (3) liability and damages on the Farms' claims related to all the affected alpacas that had consumed the contaminated feed but had not died.

At the conclusion of the trial, the jury returned a verdict in favor of the Farms. It awarded Magical Farms compensatory damages in the amount of $1,607,666.60 and Majestic Meadows compensatory damages in the amount of $30,500.00. Judgment was entered accordingly.

Although the Farms requested punitive damages among other forms of relief, before the trial commenced, the District Court granted the Lakes summary judgment on all punitive damage claims contained in the Complaint. Then, during the trial, at the close of the Farms' case, the District Court granted the Lakes judgment as a matter of law on the Farms' claim for fraud. Additionally, during the trial, the District Court instructed the jury on mitigation of damages, though the Farms objected both to the propriety of the instruction and to its content. Before final judgment was entered, the Farms moved for a new trial, in part on the ground that the jury's verdict was inadequate to

-2-

compensate them for their injuries and was against the weight of the evidence. The District Court, however, denied their motion.

On appeal, the Farms challenge the District Court's decisions with respect to their punitive damages claims, their fraud claim, the jury instruction on mitigation of damages, and their motion for a new trial. Because we agree with the Farms, we reverse.

## II.

## A.

In Counts I, III, and IV of their Complaint, the Farms alleged negligence, products liability, and fraud and sought to recover punitive damages. The District Court granted the Lakes summary judgment on all of the Farms' punitive damages claims. This Court reviews a district court's order granting summary judgment *de novo*. *See DiCarlo v. Potter*, 358 F.3d 408, 414 (6th Cir. 2004). "Summary judgment is proper where there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Jones v. Potter*, 488 F.3d 397, 402 (6th Cir. 2007) (citing Fed. R. Civ. P. 56(c)). In considering a motion for summary judgment, the Court "must construe the evidence and draw all reasonable inferences in favor of the nonmoving party." *Id.* at 402-03 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

Ohio Revised Code § 2315.21 governs the award of punitive damages in "tort actions," which the statute defines as "civil action[s] for damages for injury or loss to person or property." O.R.C. § 2315.21(A)(1). Under the statute, punitive damages are only recoverable from a defendant in a tort action if both of the following requirements are met:

> (1) The actions or omissions of that defendant demonstrate malice or aggravated or egregious fraud, or that defendant as principal or master knowingly authorized,

participated in, or ratified actions or omissions of an agent or servant that so demonstrate.

(2) The trier of fact has returned a verdict or has made a determination pursuant to (B)(2) or (3) of this section of the total compensatory damages recoverable by the plaintiff from that defendant.

O.R.C. § 2315.21(C)(1)-(2). Although "malice" is not defined by the statute, in *Preston v. Murty*, 32 Ohio St.3d 334, 512 N.E.2d 1174, syllabus (Ohio 1987), the Ohio Supreme Court defined malice as "that state of mind under which a person's conduct is characterized by hatred, ill will or a spirit of revenge" or, alternatively, "a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm." In their Complaint, the Farms specifically allege that the Lakes' "conduct evidenced a conscious disregard for the safety of the Alpacas which had a great probability of causing substantial harm. Defendants' malicious actions entitle Plaintiffs to punitive damages." Thus, only malice, and only the second definition of malice provided by the *Preston* court, is at issue.

The District Court found that the Farms could not recover punitive damages because they could not show that the Lakes consciously disregarded the safety of persons, as the harm caused injury to alpacas, not to humans. With respect to the Farms' products liability claim, the District Court found support for its position in the Ohio statutes. Ohio Revised Code § 2307.80, which expressly governs products liability claims, provides that

punitive and exemplary damages shall not be awarded . . . in connection with a products liability claim unless the claimant establishes, by clear and convincing evidence, that harm for which the claimant is entitled to recover compensatory damages . . . was the result of misconduct . . . that manifested a flagrant disregard of the *safety of persons* who might be harmed by the product in question.

-4-

O.R.C. § 2307.80 (emphasis added). With respect to the Farms' negligence and fraud claims, the District Court pointed to the plain language of the *Preston* syllabus, which defined malice as "a conscious disregard for the rights *and safety of other persons*." *Preston*, 512 N.E.2d at 1174 (emphasis added).

The District Court's holding regarding the Farms' products liability claim is very straightforward and falls squarely within the text of Ohio law. In contrast, its holding regarding the Farms' negligence and fraud claims,[1] for which it relied on *Preston*, rests on less firm ground. Since *Preston*, the Ohio Supreme Court has permitted punitive damages claims to go forward where only a conscious disregard for the plaintiff's rights, and not his or her safety, has been alleged. In *Moskovitz v. Mt. Sinai Medical Center*, 69 Ohio St.3d 638, 635 N.E.2d 331, 341 (Ohio 1994), for example, the court considered whether a punitive damages award based upon the alteration, falsification, or destruction of medical records was proper. The case involved allegations of medical malpractice against Dr. Harry E. Figgie III, "who failed to timely diagnose and treat a malignant tumor on Moskovitz's left leg and altered certain records to conceal the fact that malpractice had occurred." *Id.* at 335, syllabus. The court, after citing the *Preston* standard, held that the punitive damages award should stand, not because alteration of the records demonstrated a conscious disregard for Mrs. Moskovitz's safety, but rather because it "exhibited a total disregard for the law and the rights of Mrs. Moskovitz and her family." *Id.* at 343. Specifically, had the alteration not been discovered, the plaintiffs "would have been substantially less likely to succeed" on their medical malpractice claim. *Id.*

---

[1]The District Court granted the Lakes judgment as a matter of law on the Farms' fraud claim. For the reasons set forth below, however, that decision will be reversed.

The Ohio Supreme Court also considered a challenge to a jury's punitive damages award in *Digital & Analog Design Corp. v. North Supply Co.*, 44 Ohio St.3d 36, 540 N.E.2d 1358 (Ohio 1989). In that case, Digital & Analog sought and was awarded punitive damages as a result of the seizure of goods from a warehouse. *Id.* at 1359, syllabus. The court expressly stated that it was "looking to the record here to see whether the . . . standard of *Preston* has been met, *i.e.*, whether the defendant acted with a 'conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm . . . .'" *Id.* at 1365. The court held that

> the jury was presented with sufficient evidence from which it might reasonably infer malice from the circumstances, finding that NSC acted "with a conscious disregard for the rights of other persons that has a great probability of causing substantial harm." Having so concluded, it was quite appropriate for this jury to have determined that there had been a sufficient showing of legal malice upon which punitive damages may have been assessed.

*Id.* at 1366. Therefore, in *Digital*, even more so than in *Moskovitz*, it is clear that the Ohio Supreme Court permitted a punitive damages award to stand where the plaintiff alleged only that the defendant consciously disregarded its rights, and specifically its property rights, rather than the safety of a person.

In its decision granting summary judgment to the Lakes on the Farms' punitive damages claims, the District Court noted the "conspicuous absence of the word 'safety' in the *Digital* conclusion." Additionally, the District Court found "an internal contradiction in the definition and application of the malice standard found in the syllabus of *Preston* with the internal analysis of the malice standard found within the *Preston* holding." The District Court explained that, just a few lines after the *Preston* court states "rights *and* safety of other persons," it stated, "Furthermore, the court must determine that sufficient evidence is presented revealing that the party consciously

-6-

disregarded the injured party's rights *or* safety." *Preston*, 512 N.E.2d at 1176. According to the District Court, however, based on the Ohio Rules for the Reporting of Opinions, the definition of malice set forth in the *Preston* syllabus controls.

Regardless of these rules, it is the job of this Court to determine not only the black letter law in Ohio with regard to punitive damages, but also the way that law has been interpreted and applied by Ohio's Supreme Court. *See Northland Ins. Co. v. Guardsman Prods. Inc.*, 141 F.3d 612, 617 (6th Cir. 1998); *Imperial Hotels Corp. v. Dore*, 257 F.3d 615, 620 (6th Cir. 2001). In decisions subsequent to *Preston*, the Ohio Supreme Court has indicated that a plaintiff may go forward with a claim for punitive damages where he or she alleges malice based on the defendant's conscious disregard for his or her rights alone. Accordingly, this Court must do the same. Indeed, it has, in the case of *Avery Dennison Corp. v. Four Pillars Enterprise Co.*, 45 Fed. Appx. 479 (6th Cir. 2002), in which this Court asserted that "[u]nder Ohio law, punitive damages may be awarded in a trade secret case if the plaintiff establishes that the defendant acted with malice." *Id.* at 489 (citing *Pyromatics v. Petruziello*, 7 Ohio. App. 3d 131, 454 N.E.2d 588 (1983)). This Court further stated that "[t]he element of malice can be established by proof of conscious, deliberate, or intentional wrongdoing, or by showing that the defendant had a *conscious disregard for the rights of other persons*." *Id.* (citing *Malone v. Courtyard by Marriott Ltd. Partnership*, 74 Ohio St.3d 440, 659 N.E.2d 1242, 1247-48 (Ohio 1996)) (emphasis added).[2]

[2]The Farms point to other post-*Preston* cases in which the lower Ohio courts and the federal court applying Ohio law have permitted punitive damages claims to go forward on the basis of a conscious disregard for rights alone. *See, e.g., Lewis v. Horace Mann Ins. Co.*, 410 F. Supp. 2d 640, 665 (N.D. Ohio 2005) (denying the defendant summary judgment with respect to punitive damages because the plaintiff pled that, by violating a Michigan statutory rule on obtaining salvage titles, the defendant had consciously disregarded one of his rights); *Morgan v. New York Life Ins. Co.*, 559 F.3d 425, 440 (6th Cir. 2009) ("We are unable to conclude that a

Having determined that Ohio law would permit the Farms' to recover punitive damages for injury to rights alone, the Court now must consider whether a genuine issue of material fact existed as to whether the Lakes' actions demonstrated a conscious disregard for the Farms' property rights in their alpacas that had a great probability of causing substantial harm. Construing the evidence and drawing all reasonable inferences in favor of the Farms, we conclude that there was sufficient evidence to warrant presentation of the Farms' punitive damages claims to the jury. For example, a provision under a section labeled "Requirements" in the Lakes' Feed Quality Assurance Manual ("QA Manual") stated, "To ensure companion animal safety and product quality, plants using ionophores will not manufacture feed products for ionophore sensitive animals such as horses and some exotic species." The Massillon plant, however, mixed the alpaca feed on the same equipment as the chicken feed containing the ionophore salinomycin. Further, at his deposition, the Lakes' quality assurance claims manager, Steve Brown, testified that he recalled having conversations within the department regarding ionophore-free manufacturing plants. According to Brown, "If there is a harmful product and [it] is not in a facility[,] it's very unlikely that that particular harmful product can inadvertently wind up in the feed mill." And, although the Massillon plant had been mixing alpaca feed since 1999, and there is no evidence of ionophore contamination before the 2003 incident, deposition testimony from the Lakes' employees established that other types of feed had been contaminated due to mixing problems, including feed at the Massillon plant, prior to the alpaca

---

punitive damages award in this case violated Ohio law. The record includes evidence that New York Life consciously disregarded Morgan's right to be free from age discrimination."); *Blust v. Lamar Advertising Co.*, 157 Ohio App.3d 787, 801, 813 N.E.2d 902, 912 (Ohio Ct. App. 2004) ("Viewing the record in the light most favorable to the Blusts, we find substantial evidence from which reasonable minds could conclude that Lamar employee Melissa Kramer consciously disregarded the Blusts' property rights by ordering the cutting of trees on their property.").

feed incident. From this evidence, it could be inferred that the Lakes' employees were aware of and disregarded a risk of ionophore contamination of alpaca feed at the Massillon plant, thereby consciously disregarding the Farms' property rights in their alpacas.

Additionally, an insert in the QA Manual effective in February of 2003 listed ionophores as a food additive with a high risk of food safety issues. According to the Manual, ionophores "[c]an cause death in horses, rabbits, and exotic animals." Brown further testified that he knew why plants that manufacture feed for ionophore-sensitive animals should be ionophore-free, and he stated that he knew specifically that ionophore poisoning had caused the deaths of horses. From this evidence, it could be inferred that the Lakes' employees knew that disregarding the risk of contamination had a great probability of causing substantial harm to alpacas, including death. In other words, it could be inferred that the Lakes' employees acted with malice.

Citing Ohio law, the Lakes argue that punitive damages may not be recovered against a corporation in the absence of evidence that the corporation authorized, participated in, consented to, acquiesced in, or ratified the malicious conduct of its agents. *See Tibbs v. National Home Const. Corp.*, 52 Ohio App.2d 281, 295-96, 369 N.E.2d 1218, 1227 (Ohio Ct. App. 1977); O.R.C. § 2315.21(C)(1). Here, the Farms had sufficient evidence of corporate authorization and ratification to go forward with their punitive damages claims. When asked at a deposition who decides what feeds are manufactured at a particular facility, for example, quality assurance supervisor Jeffrey Workman responded, "That would be brought down through Land O'Lakes, I'm sure." Additionally, Workman testified that no Lakes employee was disciplined or reprimanded in connection with the manufacture of the contaminated alpaca feed.

The Lakes argue that, even if this Court determines that punitive damages are available to the Farms and that there was sufficient evidence of malice to allow presentation of such evidence to the Jury, the imposition of punitive damages in this case would violate the due process clause of the United States Constitution. Specifically, the Lakes argue that they had no notice that any conduct relating to animals could subject them to punitive damages. *See BMW of North America, Inc. v. Gore*, 517 U.S. 559, 574 (1996) ("Elementary notions of fairness enshrined in our constitutional jurisprudence dictate that a person receive fair notice . . . of the conduct that will subject him to punishment . . . ."). This argument, however, is without merit. As set forth above, in at least two decisions since *Preston*, the Ohio Supreme Court has permitted punitive damages awards to stand where only a conscious disregard for a person's rights, not safety, was alleged. *See Moskovitz*, 635 N.E.2d at 343; *Digital & Analog Design Corp.*, 540 N.E.2d at 1366. Similarly, lower Ohio courts and federal courts applying Ohio law have allowed punitive damages claims to go forward on the basis of a conscious disregard for a person's rights alone. *See Avery Dennison Corp.*, 45 Fed. Appx. at 489; *Lewis*, 410 F. Supp. 2d at 665; *Morgan*, 559 F.3d at 440; *Blust*, 813 N.E.2d at 912. In light of these decisions, the Lakes had fair notice that they could be subjected to punitive damages for conduct related to animals, or, stated otherwise, for consciously disregarding the Farms' property rights in their alpacas.

For these reasons, the District Court's decision to award the Lakes summary judgment on the Farms' punitive damages claims arising from their negligence and fraud claims is reversed.

**B.**

During trial, after the Farms presented their case in chief, the District Court granted the Lakes judgment as a matter of law on the Farms' fraud claim, a decision the Farms appeal. Under Federal Rule of Civil Procedure 50(a)(1),

> If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may:
>
> (A) resolve the issue against the party; and
>
> (B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.

Fed. R. Civ. P. 50(a)(1)(A)-(B). In diversity cases, this Court reviews challenges under Rule 50 based on legal determinations *de novo*, and challenges based on insufficient evidence under the forum state's standard of review. *K & T Enterprises, Inc. v. Zurich Ins. Co.*, 97 F.3d 171, 176 (6th Cir. 1996). In Ohio, "courts require that a court presented with a motion for a directed verdict construe the evidence and all permissible inferences therefrom most strongly in favor of the party against whom the motion is made and consider neither the weight of the evidence nor the credibility of the witnesses in disposing of the motion." *Cantrell v. GAF Corp.*, 999 F.2d 1007, 1014-15 (6th Cir. 1993) (quoting *Construction Interior Sys. Inc. v. Marriott Family Restaurants, Inc.*, 984 F.2d 749, 753 (6th Cir. 1993)). The motion should be granted "only if, after considering the evidence in this light, there can be but one reasonable conclusion as to the proper verdict." *Id.* (quoting *Construction Interior Sys. Inc.*, 984 F.2d at 753).[3]

---

[3]The federal courts use essentially the same standard. *See Christian v. Wal-Mart Stores, Inc.*, 252 F.3d 862, 867 (6th Cir. 2001).

-11-

Briefly summarized, the Farms' fraud claim centers around a tag affixed to each bag of alpaca feed contaminated with salinomycin which purported to list and provide a "guaranteed analysis" of all ingredients in the feed. This analysis did not mention salinomycin. According to the Farms, the false representations contained on these tags were material to their decision to purchase the feed and give it to their alpacas. Further, the Farms contend that the Lakes made these representations intentionally or with recklessness as to their truth or falsity. The Farms claim that they relied on the Lakes' representations regarding the contents of the feed, and that such reliance was reasonable in the circumstances.

Both parties agree that, under Ohio law, the elements of fraud are as follows:

(a)     a representation or, where there is a duty to disclose, concealment of a fact,

(b)     which is material to the transaction at hand,

(c)     made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred,

(d)     with the intent of misleading another into relying upon it,

(e)     justifiable reliance upon the representation or concealment, and

(f)     a resulting injury proximately caused by the reliance.

*Burr v. Stark Cty. Bd. Of Comm'rs*, 491 N.E.2d 1101, ¶ 2 of syllabus (Ohio 1986) (citing *Cohen v. Lamko, Inc.*, 462 N.E.2d 407 (Ohio 1984)). In Ohio, then, in an action for fraud, "it is not necessary for the plaintiff to allege or prove that the defendant made the representation knowing it was false." *Pumphrey v. Quillen*, 135 N.E.2d 328, ¶ 1 of syllabus (Ohio 1956). Rather, the plaintiff need only prove that the defendant made the representation with such recklessness as to its truth or falsity that knowledge may be implied. *Id.* at ¶ 2 of syllabus.

-12-

Here, the District Court rested its decision to grant the Lakes' motion for judgment as a matter of law on the Farms' failure to establish the fourth element: intent to mislead. Specifically, the Court held as follows:

> Let's move on to fraud. Now, knowledge is the first element of this count and it is a lesser degree of proof than intent. Therefore, even if this Court would agree with plaintiffs that there has been such an utter disregard for quality control, i.e. what eventually ends up in the feed and knowledge is imputed and there is sufficient evidence for that, the plaintiffs still face the hurdle of intent to mislead.
>
> *Intention to mislead can only make sense in this case such that once defendants had knowledge, then they, with that knowledge, intended, that is, purposely sought to mislead the plaintiffs to purchase the feed knowing there was an adulterated additive.*
>
> The undisputed evidence in this case shows the defendants only learned of the salinomycin after the alpacas started dying and took immediate steps to alleviate or lessen the impact. So even if this Court finds sufficient evidence to give the fraud count to the jury on all other elements, the intent to mislead falls short. And that is enough to keep it from reaching the jury. The motion is granted on the fraud count.

According to the District Court, the Lakes could not have intended to mislead the Farms unless they knew the feed contained salinomycin, or, in other words, unless they knew their representations regarding the contents of the feed were false. As the Farms point out, however, the District Court's holding effectively inserts an "actual knowledge" requirement into a claim for fraud which is not a prerequisite for maintaining the claim. Further, its interpretation of Ohio law would prevent a plaintiff from ever maintaining a fraud claim by showing that a statement was made with "utter disregard and recklessness as to whether it is true or false," even though Ohio law specifically allows such a claim.

In *Yo-Can, Inc. v. Yogurt Exch., Inc.*, 778 N.E.2d 80, 89 (Ohio Ct. App. 2002), the court states the same element of fraud this way: "intent to induce reliance on the representation." Plaintiffs

-13-

asserting a claim of fraud do not have to prove that the defendant intended to mislead them, which would imply that the defendant knew its representations were false. Rather, plaintiffs merely have to show that the defendant intended for them to rely on the representations that proved to be false.

Interpreting the fourth element of fraud in this way, we conclude that the Farms presented sufficient evidence at trial on each element of fraud to prevent judgment as a matter of law. First, as stated previously, they demonstrated that the labels on the contaminated feed bags contained representations by the Lakes concerning their contents. Second, they presented evidence that they read the labels and would not have purchased the feed if salinomycin had been listed as an ingredient, suggesting that those representations were material to the transaction at hand. Third, the Farms presented sufficient evidence for a jury to find that the Lakes acted with utter disregard and recklessness as to the truth or falsity of their representations concerning the contents of the alpaca feed, as they presented evidence that the Lakes manufactured the feed under circumstances that made contamination likely and in direct violation of the prohibition of the Quality Assurance Manual. Fourth, the Farms presented evidence suggesting that the Lakes intended for them to rely on the label in purchasing the feed and giving it to their alpacas for consumption; for example, the Farms demonstrated that the label stated that the ingredients listed were subject to "guaranteed analysis." Fifth, the Farms presented evidence suggesting that they justifiably relied on the representations made by the Lakes via the feed bags' labels. A manager of the plant where the contaminated feed was manufactured admitted that "guaranteed analysis" means that what is in the bag is supposed to be on the label, or what is on the label is supposed be in the bag and nothing else, "per the formula." Finally, there was certainly sufficient evidence for a jury to find resulting injury, as the Lakes admitted that 73 alpacas at Magical Farms died as a result of ingesting the feed.

-14-

The Lakes argue that the ingredient labels on their alpaca feed bags are representations and promises regarding future events and thus the Farms' fraud claim cannot lie. The Lakes state correctly that, in general, fraud is not predicated on a representation concerning a future event. In *Williams v. Edwards*, 717 N.E.2d 368, 374 (Ohio Ct. App. 1998), the court stated that "fraud is generally predicated on a misrepresentation relating to a past or existing fact, and not on promises or representations relating to future action or conduct." Here, however, the ingredient labels are not representations regarding future events. Rather, they are representations regarding the contents of the feed at the time it is sold. Further, as pointed out by the Farms, the mislabeling of the contents of a product has been recognized as a proper basis for a fraud claim under Ohio law. *See Delahunt v. Cytodyne Tech.*, 241 F. Supp. 2d 827 (S.D. Ohio 2003).

For these reasons, the District Court's decision to grant the Lakes judgment as a matter of law is reversed.

## C.

The Farms challenge both the District Court's decision to give the jury an instruction on mitigation of damages and the form of the instruction given. In reviewing a challenge to jury instructions, "[t]he standard on appeal . . . is whether the charge, taken as a whole, fairly and adequately submits the issues and applicable law to the jury." *Fisher v. Ford Motor Co.*, 224 F.3d 570, 575-76 (6th Cir. 2000) (quoting *United States v. Martin*, 740 F.2d 1352, 1361 (6th Cir. 1984)). "A judgment on a jury verdict may be vacated when the instructions, viewed as a whole, were confusing, misleading, and prejudicial." *Jones v. Consolidated Rail Corp.*, 800 F.2d 590, 592 (6th Cir. 1986) (citing *DSG Corp. v. Anderson*, 754 F.2d 678, 679 (6th Cir. 1985)). Further, although "[i]t is not error to refuse to give a requested instruction that correctly states the law, as long as the

-15-

instructions actually given fairly and adequately cover the material issues," it is error "to instruct the jury on an issue when there has been insufficient evidence presented to support a jury finding on that issue." *Jones*, 800 F.2d at 592 (citations omitted).

With regard to the affirmative defense of mitigation of damages, the District Court instructed the jury as follows:

> An injured party has a duty to mitigate damages; that is, to take reasonable steps to minimize damages resulting from the injury. The injured party may not recover for damages that could reasonably have been avoided. However, the law does not require a party to take extraordinary efforts to that which is unreasonable or impractical.

After completing the balance of the charge and taking a short recess, the District Court provided the following supplement to the mitigation instruction:

> Defendants claim plaintiffs have failed to properly mitigate damages. This is an affirmative defense. The burden of proving an affirmative defense by a preponderance of the evidence is on the defendants. You shall use the same instructions previously given on preponderance of the evidence and apply it to this issue.

The Farms argue that the Lakes did not present sufficient evidence to support such an instruction, and we agree. As noted by the Farms, the Lakes defend the mitigation instruction on the ground that evidence was introduced at trial that some market existed for the alpacas that had eaten the contaminated feed, and that the Farms nonetheless refused to sell the alpacas. The Farms' claim for damages, however, was not based on an assertion that no market existed for the affected alpacas, but was instead based on the diminution in the alpacas' market value. For example, the Farms' expert, Michael Safley, testified at trial that the market value of the surviving alpacas was reduced by two-thirds after they consumed the ionophore-contaminated feed. Therefore, the Farms did not ask for the full market value of the affected alpacas; rather, they asked for damages based on the price they

-16-

would have received had the alpacas been sold. Thus, it was error for the District Court to give the mitigation charge.

Additionally, with the mitigation instruction, the jury instructions, viewed as a whole, were confusing, misleading, and prejudicial to the Farms, *see Jones*, 800 F.2d at 592, resulting in the jury's perplexing and inconsistent damages award. The jury, for example, awarded Magical Farms $1,514,666.60 for the value of the 73 deceased alpacas for which the Lakes admitted liability. This amount is approximately one-third of the market value for those alpacas as testified to by Safley. Additionally, the jury awarded $5,000 each to Magical Farms for its alpacas Masquerade and Celeste Moon, two alpacas for which the Lakes did not admit liability for their deaths. Safley testified that, before the two alpacas ate the contaminated feed, they each had a market value of $15,000. Thus, although we are not mind readers, it appears the jury may have mistakenly believed that the mitigation instruction applied to damages for the 73 deceased alpacas. Indeed, the jury may have improperly reduced Safley's appraisals of the animals by two-thirds, even though the Farms were entitled to recover their full value.

The Lakes argue that the jury's damages awards for the deceased alpacas represent a rejection of Safley's testimony. It certainly would have been within the jury's discretion to reject Safely's appraisals. The jury's awards strongly suggest, however, that, rather than wholly discounting his testimony, they accepted Safley's testimony regarding the values of the deceased alpacas and then improperly and uniformly reduced those values by two-thirds due to confusion regarding the mitigation instruction. We cannot be certain, of course, but the mitigation instruction raises sufficient confusion to warrant a finding of prejudice.

Further, the jury found that Magical Farms proved that the Lakes caused Magical Farms to suffer injuries for its surviving alpacas, but inexplicably awarded Magical Farms $0 for those injuries. This award of zero damages appears inconsistent, as the jury awarded compensatory damages to Majestic Meadows for its surviving animals, and a number of the surviving alpacas were co-owned.

Accordingly, we hold that it was error to instruct the jury on mitigation of damages. The giving of the mitigation instruction caused the jury instructions as a whole to be confusing, misleading, and prejudicial to the Farms.

**D.**

After the jury verdict but before the court's entry of final judgment, the Farms moved the district court for a new trial on the ground that the verdict was against the weight of the evidence.[4] The court denied the motion and the Farms press that as error on appeal. We review the denial of a party's motion for a new trial for abuse of discretion. *Morgan v. New York Life Ins. Co.*, 559 F.3d 425, 434 (6th Cir. 2009). Based on the district court's errors, as detailed in the foregoing sections, and the great weight of the evidence against the jury's verdict, we conclude that the district court abused its discretion by denying the Farms' new trial motion in this case.

---

[4]The Farms also tangentially argued for a new trial on the ground that the Lakes made improper statements regarding the health of the surviving alpacas during closing arguments that prejudiced the Farms and unduly influenced the jury's unsupported damages award. In order to be entitled to a new trial on this basis, the Farms needed to "show both that the closing argument was improper and that [they] were prejudiced by the impropriety, that is, that there is a reasonable probability that the jury's verdict was influenced by the improper argument." *Fuhr v. School Dist. of City of Hazel Park*, 364 F.3d 753, 760 (6th Cir. 2004). The Farms did not meet their burden.

**III.**

For the foregoing reasons, we **REVERSE** and remand this matter for a new trial consistent with this opinion.